IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,948

CLAUDIA GEER,
*Appellee*,

v.

EDWARD EBY,
*Defendant*,

and KEY INSURANCE COMPANY,
*Appellant*.

SYLLABUS BY THE COURT

1.

In a garnishment action against an insurance company, a garnishee-insurer seeking to avoid liability under a policy because of its insured's breach of his or her duty to provide notice of a lawsuit must demonstrate prejudice from the breach.

2.

In this case, the insurance company demonstrated prejudice as a matter of law, when the undisputed facts and its policy provisions show that the insured's breach of the duty to provide notice of a lawsuit deprived the insurance company of an opportunity to contest its insured's liability or settle, without exposing the insurance company to potential liability in excess of its policy limit.

Review of the judgment of the Court of Appeals in an unpublished opinion filed May 26, 2017. Appeal from Cowley District Court; LADONNA L. LANNING, judge. Opinion filed January 18, 2019. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

1

*J. Franklin Hummer*, of Med James Inc., of Shawnee Mission, was on the briefs for appellant.

*James L. Sanders* and *Casey G. Crawford*, of Wallace Saunders, of Overland Park, were on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.:  In this garnishment action, we enforce an insurance policy's requirement that the insured inform the insurer of a lawsuit arising out of an otherwise covered automobile accident, ruling that the insurer demonstrated prejudice as a matter of law from its lack of notice of suit. We therefore reverse the district court's garnishment order in favor of the judgment creditor and her insurer, and we reverse the Court of Appeals panel's decision affirming that garnishment order.

## FACTUAL AND PROCEDURAL BACKGROUND

Claudia Geer and Edward Eby were involved in a car wreck on January 3, 2014. Eby had turned left in front of Geer, who was approaching from the opposite direction.

On the day of the accident, Geer was insured by State Farm Mutual Automobile Insurance Company, and Eby by Key Insurance Company. Eby's property-damage policy limit with Key was $10,000. Key learned of the accident on the day it happened and took Eby's statement by phone the same day.

After the accident, State Farm paid a claim for Geer's car and eventually demanded subrogation from Key in the amount of $24,620.32.

2

Key investigated the claim. It offered to pay its policy limit of $10,000 in exchange for a release of further liability for Eby. State Farm refused the offer.

The following July, State Farm's attorneys made a second demand on Key and Eby to pay $24,620.32 to satisfy State Farm's subrogation claim. Key again offered to pay the $10,000 policy limit if Geer would release Eby. State Farm's attorneys refused the offer on August 11, 2014, and countered with an offer to allow Eby to enter into an installment agreement to satisfy the remaining amount. At the same time, State Farm advised Key that "suit would be filed" as soon as August 21, if Eby did not accept the offer.

Within two days, Key's adjuster wrote to Eby, informing him of the counteroffer and threatened lawsuit. Key also advised: "'It is also important that you contact (sic) immediately if you receive any correspondence or are contacted by any of the parties involved in this accident, or their attorneys.'" Eby rejected the counteroffer on August 19.

Geer sued Eby on November 5, 2014. Eby was served by certified mail. Eby did not file an answer, and Geer moved for default judgment.

In March 2015, Eby appeared in person at a district court hearing on the motion for default judgment. The judge found that Eby had not offered any proof of excusable neglect justifying his failure to file an answer and granted default judgment against him in the amount of $27,284.04.

On September 30, 2015, State Farm's attorney sent Key a letter and enclosed the journal entry of default judgment against Eby. The letter provided Key's first notice from any source that Geer had sued Eby. Neither State Farm, State Farm's attorney, nor Eby had provided Key a copy of the petition or the motion for default judgment. In particular,

3

Eby had never notified Key of the petition, motion for default judgment, or entry of default judgment.

In response to the letter, Key again offered to pay the $10,000 policy limit in exchange for a release of Eby. State Farm rejected the offer.

Geer, as judgment creditor, filed a request for garnishment, seeking any money owed by Key to Eby. Key filed an answer as garnishee, stating that it did not owe Eby, the judgment debtor, any money. Geer disputed Key's legal position and persisted in seeking an order of garnishment against Key.

In January 2016, the parties agreed to a set of stipulated facts. The stipulations established that "Key investigated [the accident], and part of its investigation was taking the statement of its insured, Mr. Eby, on January 3, 2014." The stipulated facts also stated that Key had made several offers of the policy limit of $10,000 in exchange for a release of Eby, but State Farm had rejected each offer.

The parties further stipulated that the final communication between Key and State Farm and its attorney before the entry of default judgment was Key's August 2014 letter to State Farm's attorney, which had conveyed Eby's rejection of State Farm's offer. State Farm's attorney had not responded to the letter. Their next communication to Key was the September 2015 letter that enclosed a copy of the Journal Entry of Judgment against Eby—again the first notice to Key that Geer had sued Eby or obtained default judgment against him.

The stipulations continued:

"15. No one, Mr. Eby or anyone else, ever notified Key about the filing of the suit, about any service of process, about any hearing for a default judgment, or about the entry of any default judgment before September 20, 2015.

. . . .

"18. At no time after the petition was filed did the [law firm representing State Farm], State Farm or Mr. Eby provide to Key Insurance Company a copy of the petition that had been filed or provide a copy of the motion for default judgment to Key.

"19. Mr. Eby never notified Key of the service of process and the petition, never notified Key of the motion for default judgment, and never notified Key of the entry of default judgment."

The stipulations also said that, after being informed of the default judgment, Key again offered to pay its policy limit in exchange for a release for Eby, but State Farm refused the offer.

The stipulations also set out the following portions of Eby's insurance policy:

"REPORTING A CLAIM—DUTIES AFTER AN ACCIDENT OR LOSS

"If **YOU** or any person seeking any coverage under this policy are involved in an accident or have a **loss, WE** must be contacted as soon as reasonably possible. If **YOU** or any person seeking coverage under this policy fail to report an **accident** or **loss** to **US** promptly, or fail to cooperate with **US** in the investigation and settlement of an accident or **loss**, or fail to allow **US** to inspect **YOUR** car prior to its repair or disposal, **WE may not** provide any coverage.

5

"**The following is information YOU or any person seeking coverage under this policy must provide US. The information must be truthful and accurate:**

"(a) **YOUR** name, address, and telephone number where **YOU** can be contacted;

"(b) the hour, date, place and facts of the **accident** or **loss**;

"(c) the name of the investigating police department, if any;

"(d) the names and addresses of all persons or witnesses involved;

"(e) the current location of **YOUR car** and whether it is drivable or not.

"**YOUR additional duties:**

"When there is an **accident** or **loss YOU** or any person seeking coverage under this policy must cooperate with **US** and assist **US** in any reasonable manner, which includes but is not limited to the following:

"(a) in making settlements;

"(b) by securing and giving evidence;

"(c) by delivering to **US**, within 72 hours of receipt, any correspondence or legal papers received relating to a claim or suit;

"(d) by appearing, testifying and getting witnesses to testify at hearings or trials only as **WE** shall direct;

"(e) by giving the representative(s) **WE** designate, statements, including statements under oath, as often as **WE** reasonably request and at a time and place designated by **US**.

"**If YOUR car is damaged or stolen YOU must:**

"(a) make a report to the police, within 24 hours of the **loss**, for losses involving theft or vandalism;

"(b) protect **YOUR** damaged car. **WE** will pay any reasonable expense incurred;

"(c) show **US** the damage before repair or disposal of the car, when **WE** ask;

"(d) provide **US** with all pertinent records, receipts and invoices that **WE** request, or certified copies of them.

"**YOUR additional duties:**

"**YOU** and any person making claim for '**MEDICAL PAYMENTS'**, '**UNINSURED MOTORIST' OR 'UNDERINSURED MOTORIST' coverage must:**

"(a) give **US** all details about the death, injury, treatment, and any other pertinent information **WE** request;

"(b) authorize **US** to obtain all medical reports and records. If the person is deceased or unable to act, their legal representative must authorize **US** to obtain all medical reports and records;

"(c) be examined by doctors chosen and paid by **US**, as often as **WE** reasonably require. **WE** will provide a copy of the examiner's report to the person examined upon written request of the person or their legal representative;

7

"(d) if the **accident** involves a **'hit and run'** vehicle, **YOU** must report the accident to the police, and notify **US** as soon as reasonably possible.

"**YOUR additional duties:**

"**YOU** must not voluntarily, except at **YOUR** own expense:

"(a) make any payment or assume any obligation to others;

"(b) incur any expenses, other than for emergency first aid to others;

"(c) enter into any settlement agreement or release with others without **OUR** knowledge and written consent;

"(d) appear in court without prior notice and notification to **US**.

. . . .

"ACTION AGAINST US

"**YOU** may not sue **US** unless **YOU** have fully complied with all provisions of this policy. **WE** may not be sued under the liability coverage afforded by this policy until the **insured person's** legal liability has been decided, either by judgment against that person or by written agreement of that person, the claimant and **US. WE** may not be made a party to an action against an **insured person** to determine a person's liability.

"If, for any reason deemed necessary by **US**, separate legal counsel is required for **YOU** or any other person, **WE** will only pay for legal counsel approved by **US** in writing."

The rest of the substantive provisions of Eby's Key policy appear to have been attached to the stipulated facts.

8

Key sought summary judgment, arguing that Eby's "[f]ailure to notify Key of the litigation bars any recovery on Key's policy by Defendant [Eby] and by Garnishor [Geer]." Key acknowledged that, to prevail, it must establish not only Eby's breach of a duty under the policy but also that Key was prejudiced by the breach. Key relied on its lack of opportunity to defend the underlying case to establish prejudice. Although "[it] had notice of the claim and investigated, [] the lack of cooperation and the lack of notice of the suit prevented it from using any of that information in defense of the claims"; and "both liability and damages were already determined when Key was informed of the default judgment." Key asserted that it had "always believed there were defenses that could have been made to the original suit, but Key's duty to its insured to get a release was paramount . . . . Under the facts in the stipulation, it is possible a jury could have found 50-50 on the fault issue such that no judgment would have been entered."

Geer responded to the summary judgment motion. She acknowledged that a policy defense would defeat her garnishment claim but argued that Key had failed to establish prejudice. "Key has not been prejudiced by the failure of Eby to give notice of filing suit because Key has been willing to pay its property damage policy limit to Geer virtually since the day of the accident." Moreover, "[h]ad Key seriously believed it had any defenses on the merits of the claim that would have reduced Eby's exposure below the policy limits, Key would have asserted them at that time, or certainly by August, 2014." Geer also briefly asserted that statutorily mandated auto liability insurance under K.S.A. 40-3107 "may not be diluted."

> "While the notice of claim and suit provisions of an auto liability policy are not void *per se*, the unreasonable extension of prior case law on what constitutes prejudice from lack of notice would accomplish the same untoward result, particularly in the face of Key's failure to have ever disputed liability or damages as to this claim."

9

Geer also focused on Key's knowledge of the accident on the day it happened and said that it was aware "as of August 11, 2014 that . . . suit would be filed against Eby if Geer's settlement demands were not met or otherwise resolved." Ultimately, Geer argued,

"[l]ack of notice is only a defense if Key can show prejudice. Key's willingness to settle on more than one occasion after it had made full investigation of Geer's claims belies its present contention that Key was prejudiced in any way, and is strong evidence of a waiver of notice of suit."

The district court judge heard argument on the summary judgment motion. She asked Key's attorney whether Key had been prejudiced at all "when you're looking at dollars and cents," because Key had been willing to pay the policy limits and that is all it was being asked to do in the garnishment. Key's attorney responded,

"The fact that there were settlement negotiations prior to the default judgment, evidences Key's willingness to try to protect its insured from an excess judgment . . . . And if that didn't work . . . that would trigger Key's other duty to defend Mr. Eby in the lawsuit. And we were willing to do that, because there were facts to show a defensible claim."

The district judge denied Key's motion for summary judgment and entered an order of garnishment in favor of Geer and State Farm. She stated:

"The plaintiff met her burden of proof in establishing the validity of her garnishment. Nothing was presented by the garnishee to dispute it. [Garnishee] did not meet its burden in establishing a policy defense.

"Going directly to the language of the insurance policy:  The duties of the defendant after a loss or claim is—what they had to do is reported in the exhibit, but it says:  'We may not provide any coverage.' It requires the insured to report an accident and

the defendant did notify—actually notified immediately. Garnishee had the notice and the opportunity to investigate, which they did. And this is from Exhibit N.

. . . .

"It is discretionary on the garnishee that they may not provide coverage. It is not mandatory. There was no notice to the defendant, even within the policy, that his coverage will be lost if he does not exactly comply.

"And the second thing is that cancellation was done midterm, and under the language of the policy itself: 'If we cancel this policy, we will provide you with the reason for our decision. Our notice of cancellation will be mailed at the U.S. Post Office to the address shown on the declarations page. Proof of mailing the notice is proof of cancellation.'

"There was no showing of cancellation; there was no showing of any notice to defendant at any time, considering the potential or possible loss of coverage. Even when the garnishee contacted the defendant in August of 2014, it told him the lawsuit would be filed. Key was very aware about the lawsuit, cited its policy provisions regarding the limits on the payable damages. . . .

. . . .

"But when referring to the suit at the end, it stated only, quote: 'It's important you contact.' End quote. No specific information, and nothing regarding losing coverage. Therefore, garnishee did not meet the burden of proof regarding the policy defense, and the judgment of $9,750, which is $10,000 less the previously paid $250 deductible, is granted to plaintiff."

A Court of Appeals panel affirmed the district court's denial of Key's summary judgment motion. See *Geer v. Eby*, No. 115,948, 2017 WL 2306503, at *7 (Kan. App. 2017) (unpublished opinion). It first addressed whether Key satisfied its burden to prove

11

its policy defense and then whether the district judge abused her discretion by sua sponte considering cancellation of the policy.

On the first question, the panel concluded that "State Farm notified Key [in] August 2014 that suit was likely, if not imminent." *Geer*, 2017 WL 2306503, at *5. Even if that notice was deficient, the panel said, Key could not show prejudice:

> "The facts demonstrate that Key offered State Farm the policy's limit on several occasions, including after learning of the default judgment in September 2015. However, each offer contained the condition that Geer must sign a release of Eby from any further obligation to her and to State Farm, even though at the time it knew that Eby had failed to notify the company of the lawsuit and default proceedings. Thus, the record shows that even after learning of Eby's breaches of policy provisions, Key continued to advocate for him. It is reasonable to infer from this timeline that had Key believed it had any meritorious defense or affirmative policy defenses, it would have asserted them at that time. It was not until after the garnishment proceedings commenced that Key began to claim it was substantially prejudiced by Eby's failure to notify it of the lawsuit and default proceedings.

> "Ultimately, Key owed the same amount it continuously offered to pay prior to the entry of the default judgment against Eby. This fact shows that the lack of notice and subsequent entry of judgment did not prejudice Key." 2017 WL 2306503, at *5-6.

The panel also rejected Key's argument that the district judge had abused her discretion by looking at the cancellation provisions of the policy.

> "Key's argument that the district court abused its discretion by looking at the cancellation provision in the policy is particularly confusing in light of its defense that the policy was cancelable due to Eby's failure to notify the company about the legal proceedings. It is incongruent for Key to expect the court to scrutinize Eby's obligations under the policy but not its own. The court did not go outside the record but stayed within

12

the parameters of the stipulations and exhibits provided by the parties. The district court made reasonable inferences from the facts and evidence provided and correctly observed that the record contained no evidence that Key cancelled Eby's policy for his breach in failing to notify the company of the lawsuit. 'A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. [Citation omitted.] Mere speculation is similarly insufficient to avoid summary judgment. [Citation omitted.]' *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013)." *Geer*, 2017 WL 2306503, at *6.

We granted Key's petition for review, setting out two issues:  (1) Whether the district judge properly raised cancellation sua sponte, and (2) whether Key established prejudice from Eby's failure to give notice of the action against him. We treat the two issues together. Although Key treats them as discrete issues, the district judge intertwined her mention of cancellation with her decision on breach and prejudice. In effect, she grafted a requirement that Key comply with the policy's cancellation requirements before it could successfully challenge liability.

## DISCUSSION

The Court of Appeals panel employed the summary judgment standard of review. See *Apodaca v. Willmore*, 306 Kan. 103, 105, 392 P.3d 529 (2017) (summary judgment appropriate when no genuine issue of material fact, moving party entitled to judgment as a matter of law; appellate court applies same rules as district court). Although Key moved for summary judgment, the district judge ultimately entered judgment for Geer in the form of a garnishment order. This court applies a bifurcated standard of review to such orders. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007) (applying bifurcated standard to review of garnishment order). Under a bifurcated standard,

"[t]he function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators,* 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas,* 277 Kan. 171, 177, 83 P.3d 214 (2004). The appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *LSF Franchise*, 283 Kan. at 19.

Because this case was resolved in the district court on stipulated facts, the necessity of review of the court's factual findings falls away, and we apply de novo review to the district court's conclusions of law. This approach is essentially equivalent to that applicable to summary judgments and to the de novo standard governing appellate review of lower court decisions based on documents and stipulated facts. See *Apodaca*, 306 Kan. at 105-06; see also *State v. Brown*, 272 Kan. 843, 845, 35 P.3d 910 (2001).

"Garnishment is a procedure whereby the wages, money or intangible property of a person can be seized or attached pursuant to an order of garnishment issued by the court under the conditions set forth in the order." K.S.A. 2015 Supp. 60-729(a). In a garnishment proceeding, the creditor stands in the shoes of the debtor to enforce only what the debtor could enforce. *LSF Franchise*, 283 Kan. at 22.

"'Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position for the enforcement of a claim against the garnishee than would be the defendant in an action brought by him for the same cause; nor can any one be held in such proceedings to the payment of a liability which the defendant could not himself enforce because of existing equities and set-offs.'" 283 Kan. at 22.

14

If the party being garnished denies it owes anything to a judgment creditor, the garnishing creditor has the burden "to disprove the statements of the answer," except the garnishee has the burden to prove any offsets. K.S.A. 2017 Supp. 60-738(b). When a garnishee is an insurer of a judgment debtor, the garnishee-insurer has the burden to prove any affirmative policy defense. *Watson v. Jones*, 227 Kan. 862, Syl. ¶¶ 2-3, 610 P.2d 619 (1980).

If a district court enters a garnishment order, the order has the effect of attaching "[a]ll intangible property, funds, credits or other indebtedness belonging to or owing the judgment debtor, other than earnings, which is in the possession or under the control of the garnishee." K.S.A. 60-732(c)(1). But "[n]o judgment shall be rendered in garnishment by reason of the garnishee . . . holding moneys on a claim not arising out of contract and not liquidated as to amount." K.S.A. 60-724(2). This court has interpreted this provision as intended to exclude garnishment of unliquidated tort claims. See *Gilley v. Farmer*, 207 Kan. 536, 542, 485 P.2d 1284 (1971). Because a judgment creditor's claim against a judgment debtor's insurer sounds in contract rather than tort, the unliquidated-claims exclusion does not apply to garnishment of insurance proceeds. See 207 Kan. at 542.

In its summary judgment motion, Key sought a ruling that it did not owe anything to Eby because Eby breached his duty of cooperation under the insurance policy. Specifically, Key alleged that Eby failed to notify it of Geer's lawsuit, as required by the insurance policy.

This court applies the following rules of construction when interpreting the terms of an insurance policy.

> "'The language of an insurance policy, like any other contract, must, if possible, be construed in such way as to give effect to the intention of the parties. In construing a

15

policy of insurance, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished.

"'Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. In such case, there is no need for judicial interpretation or the application of rules of liberal construction. The court shall not make another contract for the parties and must enforce the contract as made.

"'However, where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail.

"'"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."

"'Whether a written instrument is ambiguous is a question of law to be decided by the courts. Courts should not strain to create an ambiguity where, in common sense, there is not one. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.' [Citations omitted.]" *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058-59, 179 P.3d 1104 (2008) (quoting *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575-76, 56 P.3d 789 [2002]).

16

Insurance policies typically impose various post-loss duties on insureds. These duties often are collectively called the "duties of cooperation," but they actually are multiple discrete duties. Of note, an insured typically has a duty to give notice of loss, a duty to cooperate with the insurer in defending any claim, and a duty to give notice of any lawsuit and to forward lawsuit papers. See 13 Couch on Insurance § 186:2 (3d ed. 2018). Insurers typically have corresponding duties, such as a duty to defend the claim against the insured and a duty to investigate and settle meritorious policy claims by the insured. See 13 Couch on Insurance § 186:2.

This court has acknowledged that the purpose of cooperation clauses "is to protect the insurer's interest and prevent collusion between the insured and the injured person." *Watson*, 227 Kan. at 866-67. The need for this protection stems from the insurer's information disadvantage. Authorities acknowledge that insurers generally have an advantage over insureds in most aspects of the insurance relationship, especially over bargaining power. See 13 Couch on Insurance § 186:1. But the insurer is at an information disadvantage with respect to claims. It must rely on the insured to provide notice of an event that will result in a claim and to keep it apprised of a third party's actions. See 13 Couch on Insurance § 186:1. In addition, because proof of the loss and the amount of the loss comes through the insured, the insurer must count on the insured's cooperation in defending third-party claims. See 13 Couch on Insurance § 186:1.

Eby's insurance policy with Key placed each of these duties on Eby. The policy contained a duty to give notice of loss—"If YOU or any person seeking any coverage under this policy are involved in an accident or have a loss, WE must be contacted as soon as reasonably possible"—and a general duty to cooperate—"When there is an accident or loss YOU or any person seeking coverage under this policy must cooperate with US and assist US in any reasonable manner." The policy's duty-to-cooperate

17

provision explicitly required delivery "to [Key], within 72 hours of receipt, any correspondence or legal papers received relating to a claim or suit."

The policy also included language requiring full compliance with the policy provisions by Eby before Eby could sue Key: "YOU may not sue US unless YOU have fully complied with all provisions of this policy." Although unlike these provisions, not specifically mentioned in the parties' stipulations, the policy also contained a provision stating, "No action shall lie against US unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this coverage."

The policy's condition precedent language on legal actions against Key unambiguously creates a condition precedent to Eby's enforcement of the contract. "A condition precedent is something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced." *Weinzirl v. Wells Grp., Inc.*, 234 Kan. 1016, 1020, 677 P.2d 1004 (1984).

This said, we recognize the modern trend has moved away from automatic forfeiture of coverage in such situations and toward a balancing of the interests of the insurer and the insured. See 13 Couch on Insurance § 186:41. Indeed, this court has followed the modern trend for both notice-of-occurrence and notice-of-suit cases. See *AT & SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 758-62, 71 P.3d 1097 (2003).

In *AT & SF Ry. Co.*, this court approvingly quoted from *Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F. Supp. 1489, 1515 (D. Kan. 1995), a federal case reciting the Kansas rule for late notice:

"'[U]ntimely notice, even if a breach of a condition precedent to coverage, is not alone sufficient to excuse performance of the insurer or relieve the insurer of its obligation to provide coverage when coverage otherwise should be afforded. Kansas also requires a showing of actual prejudice as a result of the untimely notice. Prejudice is not presumed and the burden is on the insurer to show that the prejudice is substantial. "When the loss will result from liability owed a third party, the insured is only prejudiced if its ability to defend against that imposition of liability is diminished by the delay." Generally, whether an insurer has been prejudiced from the failure to provide timely notice is a question of fact, but where the relevant facts are not in dispute it may be determined as a matter of law. [Citations omitted.]" *AT & SF Ry. Co.*, 275 Kan. at 759.

In *AT & SF Ry. Co.*, this court rejected the argument that an insurer must show prejudice in notice-of-occurrence cases but not necessarily do so in notice-of-suit cases. See 275 Kan. at 761 ("Under Kansas law, no distinction has been brought to this court's attention between the need for a showing of prejudice in notice-of-occurrence and notice-of-suit cases."). The court acknowledged that different rationales exist for requiring notice in the two types of cases: "'The purpose of notice of the occurrence is to enable the insurer to conduct a timely and thorough investigation of the insured's claim, while the purpose of notice of the lawsuit is to enable the insurer to locate and defend the suit.'" 275 Kan. at 760 (quoting Illinois caselaw); see also 14 Couch on Insurance § 199:84. But the difference in rationales did not require different rules on prejudice. *AT & SF Ry. Co.*, 275 Kan. at 760. "Where an insured fails to give to its insurer timely notice of a lawsuit against the insured, the insurer is required to show that it was prejudiced by such failure in order to escape liability under the policy." 275 Kan. 698, Syl. ¶ 8.

The insurers in *AT & SF Ry. Co.* could not show prejudice—largely because they were excess insurers that "'had no right nor obligation to control the defense or settlement of any claim.'" 275 Kan. at 759. Moreover, even if the insurers "had been given notice earlier many of the Insurers conceded that they would not have acted differently." 275 Kan. at 759.

19

In this case, there is no real dispute that Eby breached his duty to provide Key notice of suit under the policy. The parties stipulated that "Eby never notified Key of the service of process and the petition, never notified Key of the motion for default judgment, and never notified Key of the entry of default judgment." The parties also stipulated that the "applicable" policy language included a duty that Eby "deliver[] to [Key] . . . any correspondence or legal papers received relating to a claim or suit."

Thus the existence of prejudice to Key will determine the outcome of this appeal.

In its brief discussion of prejudice, the panel relied on three facts to conclude that Key had failed to establish prejudice.

First, the panel noted that Key had notice of the loss. "The record demonstrates that Key investigated the loss, appraised the damages, and determined that the responsibility for those damages belonged to Eby." *Geer*, 2017 WL 2306503, at *5. This is only partially true. The stipulations do not establish that Key had determined Eby was at fault in the accident with Geer. In a phone call with Eby, a Key adjuster told Eby that "he appeared to be at fault" because he was the one who turned in front of Geer. But Eby alleged that Geer had been speeding. And, in a later call, in which Eby was asking Key to send documentation to a potential employer, a Key claims supervisor told Eby that he and Key "would not be admitting fault in this matter." In addition, notice of occurrence is a separate and distinct duty Eby had under the policy, and Key does not claim Eby breached that duty. Regardless of whether Key had ample notice to allow it to investigate the underlying claim, the question here is whether Key's lack of notice of *suit* caused it prejudice.

20

Second, the panel observed that State Farm had notified Key that it "intended" to file a lawsuit and that Key "notified Eby of the likelihood of an impending lawsuit." 2017 WL 2306503, at *5. The panel then criticized Key's failure to follow up with Eby or to "explain the subsequent lack of communication with Eby regarding the Geer claim." 2017 WL 2306503, at *5. The purpose of the duty to give notice of suit is to "enable the insurer to locate and defend the suit." *AT & SF Ry. Co.*, 275 Kan. at 760. Although actual notice of the suit to Key through someone other than Eby could establish a lack of prejudice, notice of a *potential* suit cannot. See 14 Couch on Insurance § 199:98 (some courts recognize actual notice, regardless of source, as satisfying notice-of-suit policy provisions, when the actual notice sufficient for insurer to locate, defend suit). There was no indication in the stipulations that Key knew sufficient details to locate or defend the lawsuit against Eby. See *Cincinnati Companies v. W. Am. Ins. Co.*, 183 Ill. 2d 317, 329-30, 701 N.E.2d 499 (1998) ("in order to have actual notice sufficient to locate and defend a suit, the insurer must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies"). And a holding that a threat of a potential suit is sufficient to defeat Key's claim of prejudice would create a duty for insurers to monitor case filings in any venue in which an injured party could bring suit against an insured.

Third, the panel also cited Key's several offers to pay its policy limit as indicative of a lack of prejudice. "Ultimately, Key owed the same amount it continuously offered to pay prior to the entry of the default judgment against Eby," which showed "that the lack of notice and subsequent entry of judgment did not prejudice Key." *Geer*, 2017 WL 2306503, at *6. But this conclusion is unjustified given that each of Key's offers to pay the policy limit was contingent on Geer releasing Eby from further liability. In the settlement of third-party claims, an insurer acts on behalf of the insured as well as itself. See *Rector v. Husted*, 214 Kan. 230, 238, 519 P.2d 634 (1974) ("It is universally recognized that the insurer owes a duty to its insured when considering a settlement or

21

compromise of a claim against the insured."). And we have previously recognized that an especially acute conflict can arise between the two interests when the amount of a third-party claim exceeds a policy limit.

> "'On the one hand, [the insurer's] interests lie in minimizing the amount to be paid; on the other, the insured's interests, which the insurer is supposedly defending, lie in keeping recovery within policy limits, so that he will suffer no personal financial loss. The conflict becomes particularly acute where there is an offer of settlement approximating policy limits. The insured's desire to avoid the risk of a large judgment by settling within the limits of the policy, regardless of the merits of the claim, would compel him, were he in charge of settlement negotiations, to accept the offer. The insurer's interests, on the other hand, are prompted by its own evaluation of the liability aspects of the litigation and a desire not to expose itself to payments which do not adequately reflect the dangers that might be involved in pursuing the case to trial. When the settlement offer approaches policy limits, the insurer has a great deal less to risk from going to trial than does the insured, because the extent of its potential liability is fixed.'" 214 Kan. at 238 (quoting *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 [1969]).

"[D]ecisions [from other jurisdictions] run the gamut from the extreme, that the insurer is entitled to regard its own interests as paramount, to the opposite, that the insured's interests must be given priority." *Bollinger*, 202 Kan. at 336. In *Bollinger* this court took a middle position: "[T]he insurer may properly give consideration to its own interests, but it must also give at least equal consideration to the interests of the insured." 202 Kan. at 336. An insurer should evaluate a claim "without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim." *Rector*, 214 Kan. at 239. If an insurer breaches its duty to settle, it may be liable for the full amount of the insured's loss, even if that amount exceeds its undertaking under the policy. 214 Kan. 230, Syl. ¶¶ 1-2.

In this case, when Key consistently offered to pay its policy limits in exchange for a release of Eby, it was acting on behalf of itself and its insured. When it later asserted a policy defense in this garnishment proceeding, it was acting on its own behalf and adverse to Eby. Although the amount payable under the garnishment order is the same as Key's settlement offer, it would no longer receive any of the benefit it would have received if the parties had settled. Instead it opened itself to potential liability in excess of the policy limit. The panel's simple equation of the amount to be paid cannot demonstrate there was no prejudice to Key from Eby's breach of his duty to give notice of Geer's lawsuit.

The panel's analysis also suffers from its overall failure to distinguish between Eby's notice-of-occurrence and notice-of-suit duties. This error may have arisen from over-reliance on Geer's flawed arguments. Geer relies on several cases applying Kansas law to argue that the crucial question when determining prejudice is whether the insurer had notice and opportunity to investigate the *claim*. See *Henry v. Johnson*, 191 Kan. 369, 372, 381 P.2d 538 (1963); *Jameson v. Farmers Mut. Auto. Ins. Co.*, 181 Kan. 120, 127, 309 P.2d 394 (1957); *Creek v. Harder Const., Inc.*, 25 Kan. App. 2d 232, 238, 961 P.2d 1240 (1998); *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098, 1101 (D. Kan. 1993), *aff'd sub nom. Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995). According to Geer, for an insurer to establish prejudice it must not have had notice of both the occurrence and the lawsuit. But none of the cases cited by Geer stand for that proposition.

*Henry* primarily addressed the effect of a nonwaiver and reservation of rights agreement on an insurer's ability to disclaim liability after undertaking defense of the insured. But the court also gave "[a]nother reason" to support its holding:  The insurer in that case had actual knowledge of the suit because it was "actively engaged in the defense of other actions arising out of the same accident." 191 Kan. at 378 ("'It has been held that the insured's failure to give notice or forward the suit papers will not prevent recovery

23

where the insurer had actual notice and an opportunity to make an investigation and to defend the suit.'").

*Jameson* reinforced only that actual notice of suit can be sufficient no matter how the insurer learns of the suit. See 181 Kan. 120, Syl. ¶ 6 ("[I]t matters not who gives the notice so long as it is given and the insurer thereafter has actual knowledge of every step as it occurs from the time of the accident to the conclusion of the damage action.").

Actual notice simply has no relevance here; the parties stipulated that Key did not know of the lawsuit until six months after default judgment.

In the *Creek* case decided by a panel of our Court of Appeals, the injured party was granted a default judgment and only later learned of the existence of the judgment debtor's comprehensive general liability insurance policy. The injured party notified the insurer about the claim, and the insurer responded by sending letters to its insured to reserve its rights and defenses under the policy and to request information about the claim and loss. The insured did not respond to the letters. At about the same time, the injured party offered to set aside the default judgment and have a trial on the merits. The insurer rejected the offer, "contending that it had already been prejudiced by breach of several policy provisions, including those requiring notice and cooperation." *Creek*, 25 Kan. App. 2d at 233. The *Creek* panel held that the insurer had established prejudice, at least in part because of the insured's breach of the notice-of-suit duty.

> "Because [the insured] failed to give [the insurer] notice of the loss and to inform it of the suit and default judgment taken against [the insured] and because this delay prejudiced [the insurer's] ability to defend against . . . suit, [the insurer] has shown that it should be relieved of liability." 25 Kan. App. 2d at 238.

A similar fact pattern was present in the federal District of Kansas case of *Hunt*. The insurer knew of neither the occurrence nor the suit, but it did learn of the default judgment before the court awarded damages. The injured party argued that the insurer had not been prejudiced because it could have "appeared at the . . . hearing and contested damages, petitioned [the] court to set aside the default judgment . . . , or taken a direct appeal of the default judgment." 841 F. Supp. at 1104. The *Hunt* court held that the insurer had established prejudice despite not having sought to set aside the default judgment or contest the damages, because any attempt to do so probably would have been fruitless. 841 F. Supp. at 1105 ("absolutely no showing that [insurer] would have been able to set aside the default judgment which appears to be valid in all respects"). The *Hunt* decision, like the *Creek* decision relied at least in part on the prejudice to an insurer from not receiving notice of suit. See *Creek*, 25 Kan. App. 2d at 238 (discussing cases holding prejudice to insurer for insured's failure to forward suit papers until after default judgment); *Hunt*, 841 F. Supp. at 1105 (insurer prejudiced from lack of notice of suit, no opportunity to appear, defend action on liability, cross-examine witnesses, present its own evidence).

When our focus is placed, as it must be in this case, squarely on the purpose behind notice-of-suit provisions—to enable the insurer to locate and defend the suit—prejudice to Key as a matter of law is evident. *AT & SF Ry. Co.*, 275 Kan. at 760. Eby did not notify Key of the litigation. Eby's failure to respond to the lawsuit resulted in default judgment. Had Key known of the lawsuit, it would have been under a duty to defend Eby in the litigation, which would have resulted in either a factual finding on liability or a settlement. As a direct result of Eby's breach of his notice-of-suit duty, Geer's allegation that Eby's negligence caused the accident was never tested or compromised. Key was left with no choices but eventual surrender to the garnishment or a legal contest that placed it at odds with its insured and potentially exposed it to greater financial risk. Under these undisputed facts and the provisions of the policy, Key has carried its burden to show the

breach and prejudice necessary to establish its policy defense. The district court's and Court of Appeals' decisions must be reversed.

This conclusion is consistent with caselaw from other jurisdictions. See, e.g., *Washington v. Fed. Kemper Ins. Co.*, 60 Md. App. 288, 296, 482 A.2d 503 (1984) ("mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer"), *abrogated on other grounds by Sherwood Brands, Inc. v. Hartford Acc. & Indem. Co.*, 347 Md. 32, 698 A.2d 1078 (1997); see also 14 Couch on Insurance § 199:139 n.85 (collecting cases). In some other circumstances, default judgment may not be prejudicial, but those circumstances are typically limited to situations in which the default judgment was set aside or the insurer had the opportunity to set aside the judgment. See *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Harris*, 197 So. 2d 567, 568 (Fla. Dist. Ct. App. 1967) (injured party offered to set aside default judgment if insurer would defend but insurer refused); *North River Ins. Co. of New York v. Gourdine*, 205 Va. 57, 135 S.E.2d 120 (1964) (default judgment vacated, insurer given notice of second suit without delay but refused to defend). We do not have those circumstances before us here.

Two final points bear mention before we conclude.

First, when ordering garnishment, the district judge discussed the cancellation provisions of the policy. But Key did not cancel the policy; it merely disclaimed liability under the policy because of Eby's breach. "[C]ancellation of an insurance policy does not affect rights which have already accrued under the policy in favor of the insured or of a third person." 43 Am. Jur. 2d, Insurance § 406 (also noting rights of car accident victim attach at time of accident). Regardless of whether the cancellation provision required Key to give Eby notice or perform in other ways if it cancelled the policy, Key did not rely on

cancellation to avoid liability. The district judge's discussion of cancellation was simply inapposite.

Second, as mentioned above, Geer briefly asserts that allowing Key to disclaim liability under its policy impermissibly dilutes the minimum coverage requirements of the Kansas Automobile Injury Reparations Act (KAIRA). According to Geer, this court has "stated generally, 'it is held that exclusions [or provisions] in liability insurance policies are valid and enforceable as to amounts exceeding coverage required in financial responsibility laws.'" (Quoting *DeWitt v. Young*, 229 Kan. 474, 480, 625 P.2d 478 [1981].) Geer's bracketed addition of "or provisions" broadens the reach of *DeWitt*'s holding far beyond the garage-shop exclusion addressed in that case. To the extent the first syllabus paragraph of *DeWitt* speaks more broadly, it is incorrect. Nor do either of the cases cited by Geer as "upholding" *DeWitt* extend its ruling beyond the particular policy exclusion. See *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 744, 829 P.2d 897 (1992); *Universal Underwriters Ins. Co. v. Hill*, 24 Kan. App. 2d 943, 951, 955 P.2d 1333 (1998). We are unwilling to undertake a major rewrite of Kansas law on Geer's thin arguments about KAIRA.

CONCLUSION

The parties' stipulated facts establish that Eby breached his notice-of-suit duty under his insurance policy, and Key was prejudiced by that breach. The garnishee/insurer has carried its burden to prove its policy defense, and the district court's garnishment order and the Court of Appeals' decision affirming it are reversed.