NOT DESIGNATED FOR PUBLICATION

No. 121,145

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LANCE J. HARRIS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed December 13, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: This is our second opportunity to consider on appeal the K.S.A. 60-1507 motion of Lance J. Harris. He filed his motion after he pled no contest to and was convicted of distributing cocaine within 1,000 feet of a school and two counts of distributing cocaine. His pleas were in line with a plea agreement he had with the State in which his original 13 drug-related charges, spread over two separate cases, were reduced to these three. The district court accepted Harris' pleas, found him guilty, and set the matter over for sentencing. At the sentencing hearing, the district court imposed the high number in the grid box for each offense and ordered the sentences to run consecutively.

1

After an unsuccessful direct appeal in *State v. Harris*, No. 107,445, 2012 WL 6734658 (Kan. App. 2012) (unpublished opinion), Harris filed this K.S.A. 60-1507 motion in which he claimed the attorney who represented him through his sentencing was ineffective. The district court summarily dismissed Harris' motion after a preliminary hearing.

Harris appealed to this court, arguing that the district court erred in denying him an evidentiary hearing. This court reversed and remanded the case to the district court to conduct an evidentiary hearing to determine whether Harris' attorney erroneously told him that the State would remain silent at sentencing and whether Harris would have gone to trial but for this misrepresentation. *Harris v. State*, No. 115,185, 2017 WL 840227, at *2 (Kan. App. 2017) (unpublished opinion).

At the evidentiary hearing following remand, the district court heard testimony from Harris; Ty Wheeler, Harris' counsel; and First Assistant Lyon County Attorney Vernon Buck. That testimony and the evidence in the record established the following additional facts:

The plea agreement is contained in a document entitled "Tender of Plea of No Contest." In that document, which was signed by Harris, his attorney, and the first assistant Lyon County attorney, Harris stated that he was 39 years of age, had completed 16 years of schooling, and was of sound mind. Harris stated he understood the charges against him and his rights as a criminal defendant and he was waiving those rights. He acknowledged that no one had told him that he would receive any form of leniency by pleading no contest. He stated that his lawyer had informed him of the maximum punishments the court could impose for these crimes. He acknowledged that he and the State had agreed to the three charges he would plead to and that the remaining charges against him would be dismissed. The State agreed not to seek a departure sentence. Harris

2

acknowledged that "[n]o other agreements [had been] reached on sentencing." (It is apparent that Harris read this specific portion of the document because he initialed a change due to a typographical error in describing one count to which he was pleading.) Finally, Harris acknowledged that his agreement to plead no contest was not the result of "any promises made to me other than those stated."

In an accompanying Certificate of Counsel, Wheeler stated that he had made "no promises to the defendant concerning any sentence the Court may make."

At the consolidated plea hearing on Harris' two cases, Wheeler advised the court: "Your Honor, Mr. Harris will enter a plea of no contest to Count 1 and Count 5 in 11-CR-127 and to Count 5 in 11-CR-228. In exchange, the State has agreed not to seek any departure. There are no other agreements on sentencing." The court asked Harris if this was a correct statement of the agreement. Harris responded, "Yes, Your Honor."

Harris went on to acknowledge that he read the agreement and understood all its "words and phrases." Harris stated that he understood the court had the power to enter consecutive sentences for these counts. He acknowledged to the court that no promises had been made to him "other than what's been stated in court today" and that the court "is not necessarily bound by any statements or arguments or requests made by either of the attorneys in this case." The court accepted Harris' pleas and found him guilty.

Immediately before the sentencing hearing began, Harris hand-delivered to the court a motion for a continuance to allow him to gather information to support a motion for a downward departure or possibly a motion to withdraw his pleas, based on advice from his cousin. The State opposed the continuance and the court denied a continuance, stating that Harris could present his arguments on these matters "at the sentencing argument if they're applicable to sentencing."

3

As the court continued with the sentencing hearing, Buck asked the court to impose the presumptive sentences for the three offenses and requested that the court run the sentences consecutively. Wheeler, Harris' counsel, argued that under the facts the court ought to impose the minimum sentence available for each offense and ought to run the sentences concurrently. Harris then addressed the court. He stated:

> "Your Honor, in my negotiations with this plea, I know that we had [sat] and discussed those things and never in any of my, not to my knowledge about anything being ran consecutive. I know [Wheeler] said that there is a chance of 'em being ran consecutive, but he said that the State was going to stand silent."

The court proceeded to sentence Harris. Noting Harris' criminal history that included several prior convictions for possession with intent to sell cocaine, two of which were within 1,000 feet of a school, the court imposed the high number in the grid box for each offense and ordered Harris' sentences to run consecutively.

Buck testified at the later hearing on Harris' K.S.A. 60-1507 motion that he recalled engaging in plea negotiations with Harris which led to the eventual plea agreement, but he had no independent recollection of the negotiations. Buck did not believe there were any other agreements with Harris or Wheeler other than what was contained in the written plea agreement. The plea agreement does not state that the State will stand silent at Harris' sentencing.

Wheeler, Harris' counsel during plea negotiations and sentencing, was the managing attorney and project director for Kansas Legal Services in Emporia. Wheeler had provided Harris with a sentencing chart which he discussed with Harris. The chart showed the maximum possible sentences the judge could impose, and Wheeler told Harris his maximum sentence "would be 110 months if all ran consecutive." Wheeler did not recall Harris ever telling him that it was important to him that the State stand silent at

4

his sentencing. Wheeler knew that not getting a departure sentence was important to Harris, and the plea agreement prevented the State from seeking a departure sentence. But there is nothing in the agreement about the State standing silent at sentencing. The State agreeing to stand silent at sentencing could be an important concession by the State. Had that been part of the agreement, Wheeler's normal practice was to put it in the agreement.

Based on his recollection, Wheeler did not discuss with Harris the State standing silent at sentencing. Wheeler advised Harris that based on Harris' criminal history and Wheeler's experience with the sentencing judge, consecutive sentences were the most likely outcome. If Wheeler had talked to Harris about the State standing silent at sentencing, Wheeler would have made a note of it, and he had no note to that effect. Based on Wheeler's 18 or 19 years using the Tender of Plea of No Contest form to set forth plea agreements, if there had been such an agreement he would have included it in the plea agreement. It was not Wheeler's practice to have side agreements with the State that were not set forth in the Tender of Plea of No Contest form.

When Harris raised the issue at the sentencing hearing about the State standing silent, Wheeler thought that Harris was confused about the State's agreement not to seek a departure and the State's right to request consecutive sentences. The upshot of Wheeler's testimony was that he did not recall ever discussing with Harris the State not seeking consecutive sentences, and the existence of such an agreement would be inconsistent with the surrounding facts.

Harris testified that he was a graduate of Emporia State University with an associate degree. He testified that the sentencing chart Wheeler provided to him "showed me all the charges and what would happen if every charge was ran consecutive." Harris said he had been before the sentencing judge before, and he thought the judge often "goes

5

with whatever the prosecutor" recommended and he did not want the prosecutor "to . . . say anything."

Harris had used this form of plea agreement in a prior felony drug case. With regard to the provision in the plea agreement that "no other agreements" were reached on sentencing, Harris claimed this phrase was "real vague." He thought it meant that "the State was just going to stand silent, wasn't going to be no recommendations." Harris claimed he and Wheeler talked about this.

The district court denied relief on Harris' motion. Wheeler's testimony and that of Harris were mutually exclusive on the central question whether Wheeler erroneously advised Harris that the State would remain silent at sentencing. Prosecutor Buck did not believe there were any other agreements with Harris or Wheeler other than what was contained in the written plea agreement.

On this central issue the court found Wheeler's testimony to be credible. The court concluded that Wheeler had not erroneously informed Harris that the State would remain silent at sentencing. Moreover, such an agreement with the State would have been inconsistent with Harris' responses at his colloquy with the court at the plea hearing and contrary to the plain language of the plea agreement. Based upon this ruling, the district court determined it was unnecessary to address the issue of whether Harris would have pled not guilty and gone to trial but for Wheeler's claimed misstatements.

This brings us to Harris' contentions on appeal.

In Harris' previous appeal, the panel noted that despite asserting several claims in his K.S.A. 60-1507 motion, Harris only argued on appeal that he was entitled to an evidentiary hearing on his claim that his counsel had been ineffective in telling him that the State would remain silent at sentencing. Upon remand, the panel directed the district

6

court to conduct an evidentiary hearing on two factual issues related to this ineffective assistance of counsel claim: (1) whether Wheeler told Harris that the State would remain silent at sentencing; and if so, (2) whether Harris would have gone to trial without that assurance. Harris bore the burden of proof on both issues. *Harris*, 2017 WL 840227, at *2.

Our present task is to determine whether the district court's factual findings after conducting an evidentiary hearing are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). We review the district court's ultimate conclusions of law de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

We are mindful that in our review of the evidence we do not reweigh the evidence or make credibility determinations. *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). Here, the district court found Wheeler's testimony to be credible. The court did not find Harris' testimony to be credible. Based on that credibility determination, the language of the plea agreement, and Harris' statements at the plea hearing, there was substantial evidence that Wheeler did not erroneously inform Harris that the State would stand silent at sentencing on the question whether Harris' sentences should be served concurrently or consecutively.

Finally, Harris claims the court disregarded his testimony that Wheeler told him the State would stand silent at sentencing. The district court predicated its ruling on the finding that Wheeler did not inform Harris the State would remain silent at sentencing. In reviewing a negative finding, we consider whether the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias,

passion, or prejudice to reach its decision. *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015). There is no claim of bias, passion, or prejudice here.

We do not find merit in this claim. The court did not ignore undisputed evidence from Harris. Harris testified that Wheeler told him the State would stand silent at sentencing. But in ruling on Harris' motion, the district court found Wheeler's testimony to be credible. Harris' claim that Wheeler told him the State agreed to stand silent at sentencing was disputed evidence. To put Harris' testimony in dispute did not require Wheeler to call his former client a liar. The only reasonable way to read Wheeler's testimony that to his recollection he never discussed with Harris the State standing silent is that, according to Wheeler, this claimed conversation never took place. This is consistent with the prosecutor's testimony that he did not believe there were any other agreements with Harris or Wheeler other than what was contained in the written plea agreement.

We also find no merit in Harris' claim that the district court wholly ignored his testimony, apparently because the court did not detail any of that evidence in the court's findings. The district court is required to make adequate findings of fact to explain the court's decision on contested matters. Supreme Court Rule 165(a) (2019 Kan. S. Ct. R. 221). We find no support for the notion that the district must detail the testimony of a witness which does not help explain the court's decision. Besides, if Harris thought the district court's fact-finding was insufficient, he should have objected in order to afford the district court the opportunity to correct the claimed inadequacy. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). Harris does not claim he made such an objection.

We conclude that substantial evidence supports the district court's finding that Wheeler did not erroneously tell Harris that the State would remain silent at sentencing.

8

With that, it is unnecessary to consider Harris' claim that he would have gone to trial but for Wheeler's claimed misrepresentation.

Affirmed.