NOT DESIGNATED FOR PUBLICATION

No. 121,753

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JANET E. NICKLE,
*Appellee*,

v.

ANTHONY WAYNE WELBORN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY L. WALLER, judge. Opinion filed June 19, 2020.
Affirmed.

*Jeffrey W. Jones*, of Hamilton, Laughlin, Barker, Johnson & Jones, of Topeka, for appellant.

No appearance by appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and POWELL, JJ.

PER CURIAM:  Anthony Wayne Welborn appeals the district court's issuance of a protection from stalking (PFS) order against him, arguing insufficient evidence supports the order. But after a careful review of the record and, given our deferential standard of review of the district court's factual findings, we conclude substantial competent evidence supports the district court's judgment. Thus, we affirm.

1

Welborn was a disabled veteran working in a temporary position with the Veteran's Administration (VA). The VA extended a tentative job offer for a permanent position. Janet E. Nickle works in the Human Resources (HR) Department of the VA. She performed a background check on Welborn and made a recommendation. Based on Nickle's recommendation, the VA rescinded the tentative job offer to Welborn in April 2018.

Later, Welborn emailed Nickle to ask why the job offer was rescinded. Nickle emailed a response outlining the reasons. Nickle sometimes has an email exchange like this after a job offer is rescinded, and then the process is generally "over and done with" with most applicants. But Welborn emailed again, explaining his reasoning why he thought the decision to rescind the offer was incorrect. Nickle responded to explain why she had to make the decision that she made, according to her training. In May 2018, Welborn emailed again. Nickle felt this email was threatening and showed it to her supervisor. The supervisor sent the email to the VA police.

After this, Welborn emailed Nickle to ask for her supervisor's name, which Nickle provided. Welborn then emailed Nickle's supervisor directly, asserting that Nickle was "too dumb to do the job." Nickle's supervisor also reported this email to the VA police. The VA police called Welborn and told him to not contact anyone in HR again.

In May 2019, one year after Welborn's job offer was rescinded, he sent an email wishing that bad things would happen to Nickle and her children and grandchildren. He also said he hoped Nickle would die soon and he would do anything legally to hurt Nickle for the rest of her life. This email prompted Nickle to contact the VA police again and to seek a PFS order.

In June 2019, Nickle and Welborn appeared pro se at a hearing in the Sedgwick County District Court. Nickle testified to the facts as outlined above, handing the district judge each email as she explained what happened. After giving the judge the last email, Nickle testified to the following:

> "And since getting that e-mail—I mean, of course, we contacted the VA police again. And they took me out and showed me a particular place they want me to park in the parking lot. My whole office is on alert. I generally have someone walking me out to my car after work, just because, you know, it's frightening when someone—I mean, I know that him wishing me dead isn't a threat, but saying that, you know, he's going to do everything he can to hurt me, you know, it's just—it's frightening. And you know, I don't like that feeling."

Welborn did not refute these facts but did point out that none of the emails threatened Nickle. The district court granted Nickle's request for a PFS order.

Welborn timely appeals.

## DOES SUBSTANTIAL COMPETENT EVIDENCE SUPPORT THE ISSUANCE OF AN ORDER FOR PROTECTION FROM STALKING?

Welborn argues that Nickle appeared at the hearing with printed copies of the emails but never offered them into evidence as exhibits. He asserts that without the emails, the evidence is insufficient to support the district court's decision to issue a PFS order. Moreover, Welborn argues that the statutory requirements for issuing a PFS order raise the bar so that mere indignities and petty insults do not suffice to warrant a protective order. Welborn analogizes stalking with the tort of intentional infliction of emotional distress and claims Nickle's testimony about the impact of the emails did not establish substantial emotional distress.

When reviewing a mixed question of fact and law, we apply a bifurcated standard of review. We generally review the district court's factual findings under the substantial competent evidence standard while we employ an unlimited standard of review of its conclusions of law based on those facts. See *Gannon v. State*, 305 Kan. 850, 880-81, 390 P.3d 461 (2017). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). In our determination of whether substantial competent evidence supports the district court's findings, we do "not reweigh the evidence or pass on the credibility of the witnesses." *Unruh v. Purina Mills*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009); see *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

The Kansas Protection from Stalking Act, K.S.A. 2019 Supp. 60-31a01 et seq., governs PFS orders. To obtain an order, the petitioner must prove by a preponderance of the evidence that the defendant has engaged in stalking. K.S.A. 2019 Supp. 60-31a05(a). The district court may then enter an order restraining the defendant from communicating with the petitioner. K.S.A. 2019 Supp. 60-31a06(a)(1). The definitions relevant here are as follows:

> "(d) 'Stalking' means an intentional harassment of another person that places the other person in reasonable fear for that person's safety.
>
> (1) 'Harassment' means a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose. 'Harassment' shall include any course of conduct carried out through the use of an unmanned aerial system over or near any dwelling, occupied vehicle or other place where one may reasonably expect to be safe from uninvited intrusion or surveillance.
>
> (2) 'Course of conduct' means conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose

which would cause a reasonable person to suffer substantial emotional distress. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" K.S.A. 2019 Supp. 60-31a02.

Here, the evidence establishes two or more separate acts over a period of time evidencing a continuity of purpose. Welborn continued to email Nickle for over a year after his job offer was rescinded. The emails themselves are not in the record, making it difficult for us to assess whether they would cause a reasonable person to suffer substantial emotional distress. But evidence in the record fills in the blanks. Nickle reported the emails to her supervisor, and her supervisor found them alarming enough to contact the VA police. After Welborn directly emailed Nickle's supervisor, the VA police called Welborn and told him not to contact anyone within the HR department. Finally, the VA police took precautions in advising Nickle to park in a specific area and to walk to her car with an escort.

Further, the extended period and the escalation of language supports the conclusion that a reasonable person would suffer substantial emotional distress. The emails began with a simple interrogative about why the job offer was rescinded. A year later, the last email wished death upon Nickle and made threats to take legal actions to hurt her. The duration of Welborn's animosity, as well as the escalation of language, put the HR department "on alert." This extended and escalating course of conduct caused Nickle, subjectively, to be distressed. That distress was reasonable, as evidenced by the fact that others around Nickle, such as her supervisor and the VA police, also considered the emails threatening.

This course of conduct is harassment. Welborn's series of emails were knowing and intentional and directed specifically at Nickle. A year-long correspondence over a rescinded job offer would seriously annoy a reasonable person. Nor does such correspondence serve any legitimate purpose.

5

The relevant question is whether the evidence in the record before us supports the requisite finding of "reasonable fear" necessary for this harassment to qualify as stalking. Nickle's undisputed testimony shows a subjective fear for her physical safety. She told the district court that the VA police advised her to take precautions and that "it's frightening." The series of emails, extending over a year, was sufficiently persistent and aggressive to provide substantial evidence to support Nickle's objectively reasonable fear of physical danger or harm. As with the question of whether a reasonable person would suffer substantial emotional distress, the precautions taken by the HR department and the precautions recommended by the VA police show that a fear of physical danger or harm was also reasonable. Although the emails are not in the record, this fact does not preclude appellate review. The testimony in the record provides substantial competent evidence to support the district court's order.

Welborn is incorrect when he argues that a fair analogy can be made to the tort of intentional infliction of emotional distress, also known as "outrage." The elements required to prove stalking under the Kansas Protection from Stalking Act are different from proving the tort of outrage. The two basic requirements to establish "outrage" are: (1) The defendant's conduct must be extreme and outrageous and (2) the plaintiff's emotional distress must be "so severe that no reasonable person should be expected to endure it." *Kelly v. Bank Midwest, N.A.*, 161 F. Supp. 2d 1248, 1260 (D. Kan. 2001). Thus, the requirements to prove outrage are both different and arguably more difficult than the elements needed to prove stalking. While terms such as "extreme" and "outrageous" are present in the tort of outrage, key terms such as "stalking" and "harassment" are absent.

Substantial competent evidence supports the district court's factual findings necessary for the issuance of a PFS order.

Affirmed.