IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,732

BRENDA ZARAGOZA,
*Appellant*,

v.

BOARD OF JOHNSON COUNTY COMMISSIONERS,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Supreme Court will not consider issues not raised before the Court of Appeals or issues not presented or fairly included in the petition for review. Rule 8.03(b)(6)(C)(i) (2025 Kan. S. Ct. R. at 56). While the court has sometimes considered issues newly raised on direct appeal, there is no exception to this rule for an issue first raised in supplemental briefing after a petition for review has been granted.

2.

The Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq., statutorily waives government immunity and permits individuals to bring tort liability claims against all state and local governmental entities, subject to stated exceptions. The governmental entity has the burden to prove it falls within one of the KTCA's stated exceptions.

3.

Under the recreational use exception to liability provided in K.S.A. 75-6104(o), now codified at K.S.A. 2024 Supp. 75-6104(a)(15), governmental entities are given immunity and shall not be liable for damages resulting from any claim for injuries resulting from the use of any public property intended or permitted to be used as a park,

1

playground, or open area for recreational purposes, unless the governmental entity is guilty of gross and wanton negligence proximately causing such injury.

4.

The recreational use exception to liability in K.S.A. 75-6104 granting immunity to a governmental entity for the use of any public property intended or permitted to be used as an open area for recreational purposes includes recreation that refreshes the body or mind in any form of play, amusement, or relaxation and applies to both outdoor and indoor public property.

5.

The recreational use exception to liability in K.S.A. 75-6104 granting immunity to a governmental entity for the use of any public property intended or permitted to be used as an open area for recreational purposes includes both the qualifying property and areas that are integral to the functioning of the qualifying property.

6.

To establish gross and wanton negligence, a plaintiff must show realization of imminent danger and reckless disregard or complete indifference and unconcern for the probable consequences. Although the presence or absence of negligence in any degree is generally a question of fact for the jury, courts may decide the issue as a matter of law where no reasonable person could reach a different legal conclusion based on the available evidence.

Review of the judgment of the Court of Appeals in 64 Kan. App. 2d 358, 551 P.3d 175 (2024). Appeal from Johnson District Court; RHONDA K. MASON, judge. Oral argument held January 22, 2025. Opinion filed June 27, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Richard W. Morefield Jr.*, of Morefield Speicher Bachman, LC, of Overland Park, argued the cause and was on the briefs for appellant.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, argued the cause and was on the briefs for appellee.

*Jakob J. Provo*, of Prochaska, Howell & Prochaska, LLC, of Wichita, and *James R. Howell*, of the same firm, were on the brief for amicus curiae Kansas Trial Lawyers Association.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, LLC, of Wichita, and *John W. Ralston*, of the same firm, were on the brief for amicus curiae Kansas Association of Defense Counsel.

*Johnathan Goodyear*, general counsel, was on the brief for amicus curiae League of Kansas Municipalities.

The opinion of the court was delivered by

STANDRIDGE, J.: Brenda Zaragoza fell in the parking lot of a Johnson County public library when she stepped off a curb next to a storm drain onto the sloped pavement below. As a result of the fall, Zaragoza fractured her knee, ankle, and heel, requiring hospitalization, surgery, and rehabilitation. She filed a negligence claim against the Johnson County Board of Commissioners ("County"), alleging it failed to mitigate the presence of the storm drain and warn of the change in elevation between the curb and the parking surface. The district court granted summary judgment for the County based on recreational use immunity under the Kansas Tort Claims Act (KTCA), which bars negligence claims that arise from the use of public property intended or permitted to be used for recreational purposes, unless gross and wanton negligence was involved. The court also denied Zaragoza's motion to amend her petition to add a claim of gross and wanton negligence.

3

A Court of Appeals panel affirmed the district court. The panel held summary judgment was proper based on the library's recreational use immunity and that the district court did not abuse its discretion in denying Zaragoza's untimely motion to amend her petition.

Zaragoza petitioned for review on both issues. After we granted her petition, Zaragoza filed a supplemental brief raising a constitutional argument not presented in her petition for review or before the lower courts. For the reasons below, we decline to consider Zaragoza's unpreserved constitutional challenge. We uphold the panel's decision affirming the district court's grant of summary judgment based on the library's recreational use immunity. We also uphold the panel's decision affirming the district court's denial of Zaragoza's untimely motion to amend her petition to add a claim of gross and wanton negligence.

FACTUAL AND PROCEDURAL BACKGROUND

Zaragoza, a 64-year-old Johnson County resident, frequently visited the Monticello Branch of the Johnson County public library. On the morning of July 18, 2020, she visited the library to check out some books and videos. After leaving the building with materials in hand, she walked along a paved sidewalk towards the parking lot where she was parked. As she approached the curb, she stepped off the sidewalk into an adjacent mulch bed. When Zaragoza stepped from the mulch bed down onto the parking surface, her foot landed on a downward slope leading towards a storm drain, causing her to lose her balance and fall to the ground. As a result of the fall, Zaragoza fractured her knee, ankle, and heel, which required hospitalization, surgery, rehabilitation, and additional home healthcare services.

Zaragoza sued the County, alleging ordinary negligence. She claimed the County's "failure and/or refusal to remedy the dangerous condition it created, and its failure to provide patrons with any notice, warning, barrier or barricade of the dangerous condition, constituted a breach of [the County's] duty of reasonable care owed to patrons" of the library. She also claimed the County had specific knowledge of this alleged dangerous condition. In response, the County raised several defenses, including a claim that Zaragoza's suit was barred by exceptions from liability under the KTCA. See K.S.A. 75-6104 (listing general and specific exceptions from liability).

After the close of discovery, the County moved for summary judgment arguing, in part, that Zaragoza's ordinary negligence claim was barred by the KTCA's recreational use immunity exception under K.S.A. 75-6104(o), and that she had not pled, nor could she prove, gross and wanton negligence to overcome this defense. In response, Zaragoza argued recreational use immunity does not apply to a public library because its function is primarily educational, not recreational. Zaragoza further argued the library's parking lot was not "integral" to any recreational use on the day of her injury, which meant the immunity provision did not apply. Finally, Zaragoza claimed she sufficiently pled gross and wanton negligence in her original petition—despite not using those exact words—by alleging the County knew of the dangerous condition but failed to mitigate it.

After considering written and oral arguments from the parties, the district court granted summary judgment for the County. Specifically, the court held the County was entitled to recreational use immunity for ordinary negligence that extended to the library's parking lot where Zaragoza fell. The court also denied Zaragoza's motion to amend as futile and untimely because Zaragoza had failed to plead and could provide no facts to support a claim for gross and wanton negligence. On review, a Court of Appeals panel affirmed the district court's decision. *Zaragoza v. Board of Johnson County Comm'rs*, 64 Kan. App. 2d 358, 380, 382, 551 P.3d 175 (2024).

Zaragoza petitioned for review, asking this court to reverse the Court of Appeals' decision affirming the district court's grant of summary judgment and denial of her motion to amend. The Kansas Trial Lawyers Association filed a brief as amicus curiae supporting Zaragoza. The Kansas Association of Defense Counsel and the League of Kansas Municipalities filed briefs as amici curiae supporting the County.

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for review of Court of Appeals' decisions); K.S.A. 60-2101(b) (Supreme Court can correct, modify, vacate, or reverse Court of Appeals' decisions).

ANALYSIS

Zaragoza raised three arguments in her petition for review. After this court granted review of those issues, Zaragoza filed a supplemental brief that raised a constitutional argument not presented in her petition for review or before the lower courts. We combine her arguments into the following issues: (1) whether the recreational use immunity provision of the KTCA violates the Kansas Constitution, (2) whether the Court of Appeals erred by affirming the district court's grant of summary judgment based on application of recreational use immunity to a public library parking lot, and (3) whether the Court of Appeals erred by affirming the district court's refusal to allow Zaragoza to amend her petition to plead gross and wanton negligence.

I.  *Constitutional challenge*

After this court granted Zaragoza's petition for review, she raised a new argument in her supplemental brief:  that the KTCA's recreational use immunity provision violates sections 5 (jury trial) and 18 (right to a remedy) of the Kansas Constitution Bill of Rights.

6

She contends the statute unconstitutionally abrogates a common-law negligence claim against a government entity. The County responds that the issue is unpreserved and, even if it were not, sections 5 and 18 are not implicated because government entities were immune from private suits at common law when the Constitution was adopted. The County also argues the statute survives section 18's quid pro quo test. Three amici address Zaragoza's constitutional claim to varying degrees.

Zaragoza concedes her argument is unpreserved but asks this court to apply one of the prudential exceptions allowing the court to consider constitutional issues raised for the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) ("Despite the general rule, appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason."). But that exception applies to direct appeals—not to issues raised for the first time in supplemental briefing after review is granted.

Zaragoza did not raise the constitutional challenge in the district court, on direct appeal, or in her petition for review. Under Kansas Supreme Court Rule 8.03(b)(6)(C)(i) (2025 Kan. S. Ct. R. at 56), this court "will not consider issues not raised before the Court of Appeals or issues not presented or fairly included in the petition for review." See *State v. Ward*, 292 Kan. 541, 580, 256 P.3d 801 (2011). While the court has sometimes considered issues newly raised on direct appeal, see *State v. Robison*, 314 Kan. 245, 247-48, 496 P.3d 892 (2021), no case supports applying an exception to Rule 8.03(b)(6)(C)(i) for an issue first raised in supplemental briefing after review is granted—and Zaragoza cites none. Indeed, the court has consistently declined to consider unpreserved constitutional challenges not raised in the courts below or the petition for review. See,

7

e.g., *State v. Huggins*, 319 Kan. 358, 362, 554 P.3d 661 (2024); *State v. Slusser*, 317 Kan. 174, 184, 527 P.3d 565 (2023); *In re P.R.*, 312 Kan. 767, 785, 480 P.3d 778 (2021).

We acknowledge that exceptions exist under Rule 8.03(b)(6)(C)(i) for "plain error" or ambiguous preservation. See *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 864, 491 P.3d 652 (2021); *In re M.F.*, 312 Kan. 322, 333-35, 475 P.3d 642 (2020); *State v. Williams*, 311 Kan. 88, 93-94, 456 P.3d 540 (2020). But Zaragoza's claim fits neither of these exceptions. Accordingly, and consistent with established precedent, we decline to consider Zaragoza's constitutional challenge.

## II. *Recreational use immunity*

Zaragoza challenges the district court's decision to grant summary judgment for the County based on the recreational use immunity exception under the KTCA. The standard governing appellate review of a district court grant of summary judgment is well known:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.' [Citations omitted.]" *Fairfax Portfolio LLC v. Carojoto LLC*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020).

8

In support of her challenge, Zaragoza invokes principles of statutory interpretation to argue that application of recreational use immunity to a public library and its parking lot conflicts with the plain language of K.S.A. 75-6104(o). First, she claims the immunity exception does not apply to the parking lot because the library itself does not meet the plain language of the statutory requirements for a qualifying property. Specifically, she claims the library's core services are educational, not recreational, and the library is an enclosed, rather than open, space. Second, she claims that even if the library itself is a qualifying property, the immunity exception does not apply to the parking lot because granting immunity to areas "integral" to the function of a qualifying property unreasonably expands the scope of the exception beyond the plain language of the statute.

To resolve Zaragoza's claims, we begin our analysis with a general overview of the structure of the KTCA and the recreational use immunity exception under K.S.A. 75-6104(o). Next, we address each of Zaragoza's statutory interpretation arguments, which claim application of the recreational use immunity to a public library and its parking lot conflicts with the plain language of K.S.A. 75-6104(o).

A. *General overview of the KTCA and recreational use immunity*

The state and its political subdivisions (including counties) had blanket immunity from civil actions at early Kansas common law. See *Brown v. Wichita State University*, 219 Kan. 2, Syl. ¶ 4, 10, 547 P.2d 1015 (1976). But in 1979, the Legislature enacted the KTCA, which statutorily waives government immunity and permits individuals to bring tort claims against all state and local governmental entities, subject to the limitations of the act. See K.S.A. 75-6103(a) ("[E]ach governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental

9

entity, if a private person, would be liable under the laws of this state."). The County is a governmental entity under the KTCA. K.S.A. 75-6102(b), (c).

Although generally imposing tort liability on governmental entities, the KTCA includes over 20 enumerated exceptions that limit when a government can be sued. And, at the end of the statute, the Legislature included a catchall phrase stating the enumerated exceptions are not exclusive. See K.S.A. 75-6104. To avoid liability, a governmental entity has the burden to prove it falls within one of the KTCA's immunity exceptions. *Keiswetter v. State*, 304 Kan. 362, Syl. ¶ 3, 366, 373 P.3d 803 (2016).

One of the exceptions to liability is "recreational use immunity" which bars ordinary negligence claims for injuries on public property intended or permitted to be used as a park, playground, or open area for recreational purposes. See K.S.A. 75-6104(o) (now codified at K.S.A. 2024 Supp. 75-6104[a][15]). The County's basis for claiming statutory immunity here is that the Monticello Branch of the public library is used for recreational purposes and the adjacent parking lot is integral to its function. In response, Zaragoza contends granting recreational use immunity to a public library and its parking lot improperly expands the scope of the exception beyond the plain language of the statute.

B. *Statutory interpretation*

Zaragoza's claims involve statutory interpretation, which is a question of law over which we exercise unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Because the plain language of the statute is the best indicator of legislative intent, we begin by considering the language of K.S.A. 75-6104(o), giving common words their ordinary meaning while accounting for both the specific context in which the language appears and the broader statutory framework. *Montgomery v. Saleh*,

311 Kan. 649, 654-55, 466 P.3d 902 (2020). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 200, 506 P.3d 267 (2022). When there is no ambiguity, appellate courts need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *Chalmers v. Burrough*, 314 Kan. 1, 8, 494 P.3d 128 (2021).

K.S.A. 75-6104(o) states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from . . . any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

Thus, to qualify for immunity, a property must be public and intended or permitted to be used as a park, playground, or open area for recreational purposes. *Poston v. U.S.D. No. 387*, 286 Kan. 809, 813, 189 P.3d 517 (2008). Zaragoza concedes the library is public property; thus, we move on to consider (1) whether the library is intended or permitted to be used for recreational purposes; (2) whether the public library is an "open area" as that term is used in the statute; and (3) whether granting recreational use immunity to facilities or spaces that are deemed "integral" to the function of the qualifying property conflicts with the plain language of K.S.A. 75-6104(o).

11

1. *Intended or permitted to be used for recreational purposes*

We begin with the statutory criteria "recreational purposes" since the other criteria are best understood in reference to this term. The KTCA does not define the term "recreational purposes" or its root word "recreation." Lacking a statutory definition, dictionaries are good sources for determining the "'ordinary, contemporary, [and] common' meanings of words." *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). Over 24 years ago, this court adopted the dictionary definition of the word recreation:

> "'[R]efreshment of the strength and spirits after toil: DIVERSION, PLAY.' Webster's Third New International Dictionary 1899 (1986). Play 'suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment.' Webster's Third New International Dictionary 1737 (1986)." *Jackson ex rel. Essien v. U.S.D 259*, 268 Kan. 319, 330, 995 P.2d 844 (2000) (quoting *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 243-44, 666 N.Ed.2d 687 [1996]).

Here, the panel proposed a similar, updated dictionary definition of the word recreation meaning "'refreshment in body or mind, as after work, by some form of play, amusement, or relaxation'" and "'any form of play, amusement, or relaxation used for this purpose, as games, sports, or hobbies.'" *Zaragoza*, 64 Kan. App. 2d at 366 (quoting Webster's New World College Dictionary 1215 [5th ed. 2018]).

a. *Recreation is not limited to physical activity*

Zaragoza takes issue with how Kansas courts have interpreted the term "recreation" and proposes a narrower interpretation of the word to include only those recreational activities that "involve physical activity or increased risk of injury." Zaragoza

derives this proposed definition solely from *Boaldin v. University of Kansas*, 242 Kan. 288, 294, 747 P.2d 811 (1987), where, in referring to the recreational use immunity exception at that time, the court observed that "[a]lmost every recreational activity has risks of injury, and that is the reason for adopting a provision such as K.S.A. 75-6104(n)." However, the *Boaldin* court's comment was made in a very different context from the one presented here. There, the court held a governmental entity's awareness of the obvious, inherent risk of injury from sledding on a college campus did not constitute gross and wanton negligence. 242 Kan. at 294-95. In context, the comment reads as a generalization about recreational activities—that they often carry risks of physical injury—and a logical conclusion that the Legislature intended to protect governmental entities in this very type of situation.

Thus, we reject the notion that the *Boaldin* comment imposes a narrow standard for recreational use immunity that includes only "physical activities" which carry an inherent "risk of injury" (like sledding and other sports) and would exclude other types of activities that Kansas courts have since determined are also recreational. See, e.g., *Poston*, 286 Kan. at 819-20 (holding a public school's commons area served a recreational purpose); *Lane v. Atchison Heritage Conf. Center, Inc.*, 283 Kan. 439, 440-42, 153 P.3d 541 (2007) (holding a city's conference center used for musical performances served a recreational purpose); *Tullis v. Pittsburg State University*, 28 Kan. App. 2d 347, 350-51, 16 P.3d 971 (2000) (holding a college indoor theater served a recreational purpose). Although physically strenuous activities that carry an inherent risk of injury, like sports, may be first to mind when thinking of "recreation," the plain language of K.S.A. 75-6104(o) does not limit immunity to property intended or permitted to be used only for physical activities or activities that carry an inherent risk of injury.

As noted, the dictionary definition of recreation this court has adopted encompasses a broad range of activities aimed at "'amusement, diversion, or enjoyment.'"

13

*Jackson*, 268 Kan. at 330. And modern dictionary definitions support this broad definition. See American Heritage Online Dictionary (5th ed. 2022) (defining recreation as: (1) "[p]hysical or mental activity pursued primarily for pleasure"; (2) "[a]n activity, such as a game or hobby, that is pursued primarily for pleasure"); Oxford English Online Dictionary (defining recreation as: "the action or fact of refreshing or entertaining oneself through a pleasurable or interesting pastime, amusement, activity, etc.").

A public library's core services of allowing patrons to read and borrow books and media fit within these common and ordinary meanings of recreation. In fact, a brief internet search reveals the terms "recreational reading," a.k.a. "leisure reading," are in common use and many articles, studies, and books have been published on the subject. See, e.g., Block & Mangieri, *Recreational Reading: 20 years later*, The Reading Teacher, 572-80 (Mar. 2022); Levine, Cherrier, Holding & Koestner, *For the Love of Reading: Recreational Reading Reduces Psychological Distress in College Students and Autonomous Motivation is the Key*, J. Am. Coll. Health (Jan. 2022); Wilhelm & Smith, *The Power of Pleasure Reading: What We Can Learn from the Secret Reading Lives of Teens*, The English Journal, 105.6, 25-30 (2016); Moyer, *Learning from Leisure Reading: A Study of Adult Public Library Patrons*, Reference & User Services Quarterly, 66-79 (2007); Morrow, *Promoting Innercity Children's Recreational Reading*, The Reading Teacher, 266-74 (Dec. 1987).

Therefore, we decline Zaragoza's request to narrowly interpret the term "recreational" in the statutory immunity exception to include only those recreational activities that "involve physical activity or any increased risk of injury."

14

### b. *Recreational purposes on or before the date of injury*

In addition to the core recreational function of allowing patrons to read and borrow books and other media, the record here shows that the Monticello branch of the public library also offers a variety of other programming to the public which meets the definition of "recreational," including:

> "art installations and sculptures by local artists; a dedicated story room for children, which is open to the public when not in use; an outdoor children's storywalk; and community events such as toddler and family story times, tabletop gaming nights, book clubs, events that allow children to read stories to therapy dogs, an after-hours mystery-solving event for teens, and yoga for preschoolers." *Zaragoza*, 64 Kan. App. 2d at 368.

Zaragoza does not attempt to claim these activities are not recreational. Instead, she argues there is no evidence that the library or its parking lot were being used or intended to be used for recreational purposes on or before the date of her injury. But the library branch manager's deposition testimony repudiates Zaragoza's argument. When asked about the factual basis for the library's claim of recreational use immunity, the branch manager responded:

> "'A. So for that one, Johnson County Library provides programming such as we have performers that come. We've had—we have tabletop programming. We have story times, outdoor programming. We've had outdoor story times on the terrace, just various different programming that we—that we have on site.
>
> "'Q. Are you suggesting that Ms. Zaragoza was making a recreational use of the parking lot when she was injured?
>
> "'A. I'm not sure—I'm not sure if I'm suggesting that, but I'm just saying that that's what we—we do have those things.

"'Q. Okay. Do you have a factual basis for believing that Ms. Zaragoza was engaged in recreation when she was walking from the library building to her car?

"'A. I'm not sure that I'm claiming that. I'm just kind of stating that's what we provide at the library.

. . . .

"'Q. Are you talking about inside the library building?

"'A. Inside the library building, and we have used—we have used the parking lot. Not the parking—we have used the sidewalks to do like some various different programming, such as when we did the opening of Monticello, we had a poem that we dedicated out there, a time capsule out there on the sidewalks as well, and then with the extent of the exterior, we have used the terrace to do story times.

"'Q. That wasn't going on on the date that Ms. Zaragoza was injured though, was it?

"'A. The activities outside were not going on.'" 64 Kan. App. 2d at 369.

Even so, Zaragoza contends the panel improperly inferred from this testimony that the library offered these activities *before or at the time of* her injury; she claims such an inference is improper because summary judgment standards required the panel to infer that the library only began offering these programs after her injury. See *Fairfax Portfolio LLC*, 312 Kan. at 94-95 (Courts are "'required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the [summary judgment] ruling is sought.'"). Yet Zaragoza offers no evidentiary support for her claim that the library only began offering recreational programming after her injury. See 312 Kan. at 94-95 (party opposing summary judgment "must come forward with evidence to establish a dispute as to a material fact"); *Geer v. Eby*, 309 Kan. 182, 190,

16

432 P.3d 1001 (2019) ("Mere speculation is . . . insufficient to avoid summary judgment."). Thus, there is no material dispute on this issue to prevent summary judgment.

As for Zaragoza's more general argument that recreational activity must be happening at the precise time of an injury, we note the plain language of the statute places no such temporal restrictions. Recreational use immunity "depends on the character of the property in question and not the activity performed at any given time." *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 257, 32 P.3d 1156 (2001) (citing *Jackson*, 268 Kan. 319, Syl. ¶ 6). This court has held the correct test to be applied is "whether the property has been used for recreational purposes in the past or whether recreation has been encouraged." *Poston*, 286 Kan. at 819 (quoting *Lane,* 283 Kan. at 447).

In considering the plain language of K.S.A. 75-6104(o) and giving common words their ordinary meanings, we conclude a public library is intended and permitted to be used for the recreational purpose of allowing patrons to read and borrow books and other media. And, as many public libraries do, the Monticello branch of the public library offers additional programming that independently meets this definition.

2. *Park, playground, or other "open area"*

To qualify for recreational use immunity, public property must be intended or permitted to be used as a park, playground, or "open area" for recreational purposes. K.S.A. 75-6104(o). Zaragoza argues that a public library is not an "open area" within the plain language of the statute because it is "an enclosed building."

The adjective "open" has many dictionary definitions, the first being:  "having no enclosing or confining barrier." Merriam-Webster Online Dictionary

17

(https://www.merriam-webster.com/dictionary/open). Although an "enclosing" barrier suggests a physical restriction, the term "confining" can refer to either a physical or conceptual restriction. This conclusion is supported by another definition of "open" meaning "not restricted to a particular group or category of participants" (i.e., "*open* to the public"). Merriam-Webster Online Dictionary (https://www.merriam-webster.com/dictionary/open). A public library therefore fits the ordinary or common description of an "open area" because access to the library is neither confined nor restricted to a particular group or category of participants.

Zaragoza disagrees, arguing the Legislature intended the term "open area" to be narrowly restricted to outdoor areas. Though Zaragoza offers no support for this contention, we will construe her argument as one alleging that the statutory language is ambiguous, which allows us to review legislative history, canons of construction, or other background considerations to determine legislative intent. See *City of Dodge City v. Webb*, 305 Kan. 351, 356, 381 P.3d 464 (2016) (citing cases).

a. *Legislative history*

After comprehensive review, we find no "smoking gun" in the legislative history to indicate what the Legislature meant by the exact wording of the recreational use immunity provision of the KTCA. In 2004, University of Kansas School of Law Professor William Westerbeke critically observed that "Kansas courts have not seriously delved into the legislative intent underlying the recreational use immunity" to faithfully guide the interpretation of this provision. Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 1018 (2004) (analyzing the KTCA and Kansas Supreme Court decisions interpreting its key provisions). This is not entirely true. The *Jackson* court "delved" into the legislative history surrounding this provision and came up mostly empty-handed.

The *Jackson* court chronicled the legislative proceedings leading up to enactment of the KTCA. The court noted that the KTCA was introduced in the Senate on January 11, 1979, as S.B. 76 and later replaced with a substitute bill, neither of which contained a recreational use immunity provision. 268 Kan. at 326. The court described how the substitute bill was subjected to "a significant amount of debate" in the Senate before being passed and sent to the House Judiciary Committee, where the bill was extensively debated and was amended to add many exceptions, though none of them added a recreational use exception to immunity. 268 Kan. at 326-27. Then, "[o]n April 2, 1979, Representative Stites made a motion before the House to add the 'recreational use' exception now found at K.S.A. 75-6104(o). There are no committee notes discussing the 'recreational use' exception." 268 Kan. at 327. The court noted the House passed the amended substitute bill the same day, April 2, and the Senate concurred the next day.

Given what little legislative history is available, the *Jackson* court considered the likely legislative purpose and supporting policy of the recreational use immunity statute and ultimately concluded:

"The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation." *Jackson*, 268 Kan. 319, Syl. ¶ 10.

Following in *Jackson*'s footsteps, we uncovered no new information that would support departing from this precedent.

19

b. *Canons of construction*

Absent legislative direction, we find helpful the well-established canon of construction directing the court to construe statutes to avoid unreasonable or absurd results. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). First, we note that the statutory language does not restrict immunity solely to properties that are physically "open" to the elements; instead, it includes any property intended or permitted to be used for recreational purposes.

Next, to read the phrase "open area" so narrowly as to exclude an indoor facility intended for public recreation, as Zaragoza proposes, would result in the kind of unreasonable or absurd results that we must avoid. Recreational use immunity would depend, not on the purpose of the facility, but whether the same activity took place indoors or outdoors. For example, the public library's StoryWalk would qualify for recreational use immunity if it was hosted outdoors but would not qualify for immunity if it was hosted indoors. The same goes for indoor/outdoor musical concerts, indoor/outdoor county fair activities, indoor/outdoor farmers' markets, indoor/outdoor yoga classes, as well as indoor/outdoor swimming pools, tennis courts, and basketball courts. To avoid these unreasonable and absurd results, we reject the interpretation of the statute advanced by Zaragoza and continue to apply the logic from *Jackson*: "It defies common sense to hold that K.S.A. 75-6104(o) provides immunity from injuries which occur on a football field, a baseball field, a track and field area, and a sledding area, but not on an indoor basketball court solely because it is indoors." 268 Kan. at 325.

Our interpretation of "open area" as one that is not confined or restricted but open to the public is consistent with the legislative purpose of the recreational use immunity

statute we continue to use from *Jackson* and avoids absurd or unreasonable results. A public library easily satisfies this criteria as a qualifying "open area."

c. *Stare decisis*

Our conclusion that a public library is an "open area" under the recreational use immunity statute is consistent with our precedent holding other types of indoor facilities qualify for recreational use immunity. See, e.g., *Jackson*, 268 Kan. at 325 (recreational use immunity applies to indoor school gymnasium); accord *Poston*, 286 Kan. at 812-16 (recreational use immunity applies to middle school indoor "commons" area adjacent to gymnasium); *Lane*, 283 Kan. at 451-52 (recreational use immunity applies to indoor conference center); *Wilson v. Kansas State University*, 273 Kan. 584, 591-92, 44 P.3d 454 (2002) (recreational use immunity applies to indoor restrooms at a football stadium).

"The doctrine of stare decisis recognizes that 'once a point of law has been established by a court, that point of law will generally be followed by the same court and all courts of lower rank in subsequent cases where the same legal issue is raised.'" *McCullough v. Wilson*, 308 Kan. 1025, 1032, 426 P.3d 494 (2018). This court should not "lightly disapprove of precedent" because "adherence to precedent promotes the systemic stability of our legal system." *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016). While "stare decisis is not an inexorable command," this court endeavors to adhere to the principle unless clearly convinced a rule of law established in its earlier cases "'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" 304 Kan. at 766.

We find no justification to depart from our legally sound and longstanding precedent interpreting the recreational use immunity statute to provide immunity for indoor recreational facilities. Moreover, we conclude such a departure would do more

21

harm than good. To jettison this body of precedent now and without good cause would create significant disruption and uncertainty. For over 25 years, state and local governments have justifiably relied on the settled interpretation of the KTCA recreational use immunity provision in managing risk, maintaining public facilities, and encouraging community use of indoor recreational spaces. These decisions likely inform how governments allocate resources, structure programming, and decide whether—and under what conditions—to open facilities like libraries, gyms, community centers, and auditoriums to the public. A sudden judicial reversal at this stage would not only create legal confusion, but could also chill public access and community engagement.

In sum, we reaffirm the settled principle that the recreational use immunity statute applies to indoor public spaces intended or permitted to be used for recreational purposes. Doing otherwise would produce unreasonable and absurd results, needlessly destabilize the law, and undermine the confidence public entities place in long-established judicial interpretations.

3. *Areas that are "integral" to the function of qualifying property*

Finally, Zaragoza claims that even if the library itself is a qualifying property, the immunity exception does not apply to the library's parking lot because granting immunity to areas "integral" to the function of a qualifying property unreasonably expands the scope of the exception beyond the plain language of K.S.A. 75-6104(o).

Consistent with the rules of statutory interpretation, courts should "avoid reading something into the statute not readily found in its words." *City of Wichita v. Griffie*, 318 Kan. 510, 523, 544 P.3d 776 (2024) (citing *State v. Eckert*, 317 Kan. 21, 27, 522 P.3d 796 [2023]). Yet this court has found in several cases that a qualifying public property's recreational use immunity extends beyond areas specifically intended or permitted for

recreational purposes to co-located or adjacent areas which serve an ancillary purpose. See, e.g., *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 93-94, 97, 785 P.2d 986 (1990) (holding a high school football field's recreational use immunity applied to a grassy drainage area between the field and locker room where a student fell); accord *Poston*, 286 Kan. at 810, 816 (holding a public school commons area outside the gymnasium where a parent suffered an injury from a falling piece of hardware is covered by recreational use immunity); *Lane*, 283 Kan. at 441, 445 (holding a convention center's recreational use immunity extended to its loading dock where a musician slipped and fell on ice); *Wilson*, 273 Kan. at 589 (holding a college football stadium's recreational use immunity applied to the restrooms in the stands where a fan suffered chemical burns by sitting on a toilet seat). Of these cases, *Wilson* is the most comprehensive and instructive here.

*Wilson* involved a negligence claim by a college football game attendee who suffered chemical burns and scarring after sitting on an unknown substance on a toilet seat in the stadium restroom. The court noted that the statutory language broadly provides for immunity of "*any* public property intended or permitted to be used as a park, playground, or open area for recreational purposes" and did not expressly limit immunity only to the specific "*portion*" of the property used for recreational purposes. (Emphasis added.) 273 Kan. at 592. Considering the stadium restrooms, the court observed these facilities were "not 'incidentally' connected to the stadium but rather necessarily connected . . . by plan." 273 Kan. at 590 ("A facility servicing large numbers of people must include restrooms."). Additionally, the court found the restrooms significantly enhanced the use of the stadium by permitting attendees to enjoy the recreational purpose of watching football games without having to leave the premises to access a restroom. 273 Kan. at 589-90 (citing persuasive authority from Illinois appellate courts and the Wyoming Supreme Court). On these bases, the *Wilson* court held that a qualifying public property's recreational use immunity includes areas that are integral to the property when

they are necessarily connected to the property or collectively intended to be used for recreational purposes. 273 Kan. at 591-92.

This court has continued to interpret the statutory phrase "any property" to support application of the recreational use immunity to facilities that are integral to the function of a qualifying property, even when the ancillary facility or area possesses no independent, recreational character. See *Lane*, 283 Kan. at 444-45 (holding recreational use immunity extends collectively to an indoor conference center permitted to be used for recreational purposes and the outdoor loading dock where plaintiff was injured).

Relying on *Wilson*, the panel analyzed the function of the parking lot with respect to the library and found:

> "Zaragoza conceded to the district court that the library parking lot is integrally connected to the library's educational use, but she contends that the parking lot is not integrally connected to its recreational use. But it defies logic to assert that the library's parking lot is integral to some of the library's offerings, but not others. The library's parking lot serves as the primary location for patrons to park their vehicles while visiting the library, regardless of their purpose in going there. See K.S.A. 60-409(a) (permitting court to take judicial notice, without request from either party, of specific facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute). And the parking lot has no viable purpose apart from the library; its only function is to facilitate the use of the library, be it recreational or educational." *Zaragoza*, 64 Kan. App. 2d at 372.

We agree with the panel and conclude the phrase "any property" supports application of recreational use immunity to areas that are integral to the functioning of a qualifying property. Our conclusion in this regard is supported by the plain language of the statute and consistent with principles of stare decisis.

24

4. *Conclusion*

We conclude the plain language of K.S.A. 75-6104(o) makes clear that the Monticello branch of the Johnson County public library is a qualifying property under the statutory recreational use immunity exception because it is public property intended or permitted to be used as an open area for recreational purposes and the phrase "any property" supports application of recreational use immunity to areas that are integral to the functioning of a qualifying property.

III. *Untimely motion to amend petition*

Finally, Zaragoza challenges the panel's decision affirming the district court's ruling denying her untimely motion to amend her petition to add a claim of gross and wanton negligence against the County.

Under K.S.A. 2024 Supp. 60-215(a)(2), once the time to amend a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent, or the court's leave. The court should freely give leave when justice so requires." We review a district court's decision on a motion to amend pleadings for abuse of discretion. *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 308 Kan. 1040, 1045, 427 P.3d 9 (2018). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing it. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

As discussed, the recreational use immunity extended in K.S.A. 75-6104(o) may be negated when a municipality is guilty of gross and wanton negligence. Thus, even

25

though we found that recreational use immunity under K.S.A. 75-6104(o) applies to the library's parking lot, the County may still be liable for Zaragoza's injuries if it "is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 75-6104(o).

Gross and wanton negligence requires more than the mere carelessness or inadvertence of ordinary negligence but less than a willful act. See *Soto v. City of Bonner Springs*, 291 Kan. 73, 82, 238 P.3d 278 (2010). Culpability depends on action or inaction "'indicating indifference to known circumstances.'" *Adamson v. Bicknell*, 295 Kan. 879, 890, 287 P.3d 274 (2012); see *Gould v. Taco Bell*, 239 Kan. 564, 572, 722 P.2d 511 (1986) ("'Wantonness' refers to the mental attitude of the wrongdoer rather than a particular act of negligence. It follows that acts of omission as well as acts of commission can be wanton since reckless disregard and indifference are characterized by failure to act when action is called for to prevent injury.").

To establish gross and wanton negligence, a plaintiff must show (1) realization of the imminence of danger and (2) a reckless disregard or complete indifference and unconcern for the probable consequences. *Soto*, 291 Kan. at 82; see *Reeves v. Carlson*, 266 Kan. 310, 314, 969 P.2d 252 (1998) (keys to finding of gross and wanton negligence are knowledge of dangerous condition and indifference to consequences). The presence or absence of negligence in any degree is generally a question of fact for the jury. But courts may decide the issue as a matter of law where no reasonable person could reach a different legal conclusion based on the available evidence. *Gruhin v. City of Overland Park*, 17 Kan. App. 2d 388, 392, 836 P.2d 1222 (1992) (citing *Smith v. Union Pacific Railroad Co.*, 222 Kan. 303, 306, 564 P.2d 514 [1977]).

Zaragoza's original petition did not plead gross and wanton negligence; her sole claim was for ordinary negligence. The district court denied Zaragoza's motion to amend her petition to add a claim of gross and wanton negligence as both futile and untimely,

26

finding the facts she sought to add did not amount to gross negligence and the deadline to amend the petition had long passed. The panel affirmed the district court's ruling on both grounds. *Zaragoza*, 64 Kan. App. 2d at 377-79, 381-82.

Zaragoza points to the following direct evidence from which she claims a jury could conclude the County engaged in gross and wanton negligence: (1) the County had painted another curb yellow as a safety measure elsewhere in the parking lot and (2) the County failed to install a bush or plant in the mulch bed that she walked through before stepping down onto the sloped parking lot. Based on this evidence, Zaragoza suggests the County knew the curbs in the library's parking lot constituted a dangerous condition and demonstrated a complete indifference by not correcting the danger where she fell. Zaragoza argues the district court should have granted her motion to amend because the County concealed this evidence until after the deadline to amend her petition had passed.

Zaragoza's arguments are unpersuasive. First, her claim that the County concealed this evidence is speculative and unsupported by the record. The deadline for Zaragoza to amend her petition was May 20, 2022. Zaragoza did not question the County about the yellow paint on the library's front curb until well after the deadline to amend had passed. In its December 15, 2022, response to requests for admissions, the County denied that the paint on the library's front curb served as "a warning as to the existence of a curb or as to the slope of the walking space." In her January 5, 2023, deposition, the library's capital program manager testified that the curb in the library's drop-off area could be painted yellow to designate a fire lane. She also recalled that the curb had been painted following complaints about the lack of differentiation between the curb and the parking lot. The County's differing responses about the reason for the painted curb were given only three weeks apart. This is hardly proof of concealment. Zaragoza even acknowledged that it was "entirely possible that the Library's employees did not communicate this important information to its counsel earlier in the discovery process."

27

Second, the evidence Zaragoza relies on does not establish gross and wanton negligence. As discussed, to establish gross and wanton negligence, Zaragoza had to show that (1) the County knew or had reason to believe that the location in the parking lot where she fell constituted a dangerous condition and (2) the County failed to address the danger. See *Soto*, 291 Kan. at 82. She makes no such showing.

Zaragoza was injured when she stepped down from the curb into an area of the parking lot that was sloped near a rainwater drain. At the time of Zaragoza's injury, over 300,000 people had passed through the library's doors since its opening nearly two years earlier. There is no evidence that any other patron had fallen near the slope in the parking lot, and neither the construction plans nor the city codes required the curb where Zaragoza fell to be painted. Despite Zaragoza's assertion to the contrary, the County's decision to paint the curb in another area of the parking lot does not show that it was aware of the danger presented by the slope where Zaragoza fell. This is because the danger presented by the curb near the drop-off area of the library is separate and distinct from the danger of the sloped area of the parking lot where Zaragoza fell. Indeed, Zaragoza did not fall because she was unaware that she was stepping down from the curb into the parking lot. Before her injury, Zaragoza had visited the library and parked in the parking lot on many occasions. But this was the first time she walked through the mulch bed when leaving the library. Zaragoza said she knew she was about to step off the curb but was not expecting the surface of the parking lot to slope down. This is a different danger than that previously experienced by other library patrons and remediated by the County.

Thus, evidence that the County painted the curb near the library's drop-off area does not establish that the County knew the slope in the parking lot constituted a dangerous condition. See *Lee v. City of Fort Scott*, 238 Kan. 421, 424-25, 710 P.2d 689

(1985) (City's issuance of traffic citations for driving off roadway at a park did not establish City's awareness of imminent danger of steel cables strung between two trees in the park; cables had been in place for seven years with no prior accidents involving the cables reported); *Robison v. State*, 30 Kan. App. 2d 476, 480, 43 P.3d 821 (2002) (rejecting claim of gross and wanton negligence based on plaintiff's slip and fall in hallway outside pool at a state hospital where evidence was presented that state employees knew that mats had been removed from the hallway but did not know of any excess water in the hallway); *Lanning v. Anderson*, 22 Kan. App. 2d 474, 480-82, 921 P.2d 813 (1996) (failure to foresee a combination of elements leading to an accident is not gross and wanton negligence; wantonness indicates an indifference to known circumstances); *Gruhin*, 17 Kan. App. 2d at 392-93 (summary judgment inappropriate where employees of golf club had knowledge of a prior accident occurring at same location where plaintiff received his injuries and did nothing to protect golfers from this dangerous condition other than using chalk lines to mark the area around the hole where plaintiff was injured).

Nor does the absence of a plant in the mulched area that Zaragoza stepped into before her fall constitute proof of gross and wanton negligence sufficient to establish the County's knowledge of the danger or its indifference in failing to address it. Although the original design plans called for a plant to be placed in the mulched area, there is no evidence in the record showing whether a plant had ever been there or why one was not there on the date Zaragoza fell. Although a plant arguably would have deterred a patron from walking through the mulch and onto the sloped area of the parking lot, no evidence suggests that a plant was intended for that purpose or that it would have provided a warning about the slope. And there is no evidence that the County knew a plant was missing from that location or that its absence presented any danger to library patrons.

29

Because no evidence shows the County was aware of the specific danger that caused Zaragoza's injury or that the County otherwise displayed indifference in failing to address the danger, the district court did not abuse its discretion in denying Zaragoza's untimely motion to amend her petition to add a claim of gross and wanton negligence.

CONCLUSION

For the reasons above, we decline to consider Zaragoza's unpreserved constitutional challenge, we uphold the panel's decision affirming the district court's grant of summary judgment based on the library's recreational use immunity, and we uphold the panel's decision affirming the district court's denial of Zaragoza's untimely motion to amend her petition to add a claim of gross and wanton negligence.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

BILES, J., not participating.

* * *

STEGALL, J., concurring:  If interpreting this statute were a matter of first impression in this case, I would agree with the view expressed in the dissent. As it is, with decades of undisturbed caselaw interpreting the recreational use immunity in more expansive ways—an interpretation relied upon by the public and government entities alike—I am of the view that stare decisis compels the result reached by the majority. Hence, I concur in the outcome solely on those grounds.

WILSON, J., joins the foregoing concurring opinion.

30

* * *

WALL, J., concurring in part and dissenting in part:  The Kansas Tort Claims Act shields government entities from liability for simple negligence when someone is injured while using "any public property intended or permitted to be used as a park, playground or open area for recreational purposes." K.S.A. 2024 Supp. 75-6104(a)(15). Twenty-five years ago, our court took a remarkable interpretive leap, concluding that an "open area" included indoor spaces like school gymnasiums. *Jackson v. U.S.D. 259*, 268 Kan. 319, 325, 995 P.2d 844 (2000). Today, the majority reaffirms that interpretation, holding that a branch of the Johnson County Library qualifies as an "open area" within the plain meaning of the statute.

*Jackson* failed to engage with the statutory text. Instead, it simply declared that excluding indoor spaces "defie[d] common sense." 268 Kan. at 325. Now the majority attempts to salvage this precedent by interpreting "open area" to mean an area "'not restricted to a particular group or category of participants.'" *Zaragoza v. Board of Johnson County Comm'rs*, 320 Kan. ___, ___, slip op. at 18. This strained reading ignores the statutory context and cannot be reconciled with common usage.

Still, the doctrine of stare decisis ordinarily directs courts to follow points of law previously established by the same court. See *State v. Moeller*, 318 Kan. 860, 864, 549 P.3d 1106 (2024). This foundational principle ensures legal stability and predictability through consistent application of established doctrines. And I have emphasized these interests in many cases. See, e.g., 318 Kan. at 863-74; *In re N.E.*, 316 Kan. 391, 412-19, 516 P.3d 586 (2022); *State v. Clark*, 313 Kan. 556, 565-70, 486 P.3d 591 (2021).

Yet our court has consistently recognized that "'stare decisis is not an inexorable command.'" 313 Kan. at 565. We depart from precedent when two conditions are met:

31

we must be clearly convinced (1) that our prior interpretation was originally erroneous and (2) that more good than harm will come from abandoning it. See *In re N.E.*, 316 Kan. at 412-13. Both conditions are satisfied here. *Jackson*'s interpretation contradicts the plain statutory text. And overruling it would both restore the intended balance in the Tort Claims Act and respect the separation of powers by applying the Legislature's unambiguous language. I therefore respectfully dissent from the majority's decision to affirm summary judgment for the library, though I concur that we should not address the constitutional issue raised for the first time in supplemental briefing.

*Jackson*'s interpretation of "public property intended or permitted to be used as a park, playground or open area for recreational purposes" is untenable.

The path to today's decision begins with *Jackson*, where a middle school student broke his arm while using a springboard during gym class. His mother sued the school district for negligence and argued that the school's gymnasium was not a "park, playground or open area for recreational purposes" under the recreational-use provision of the Tort Claims Act. Specifically, she argued that the Legislature intended to limit an "open area for recreational purposes" to outdoor areas.

Our court disagreed. It first noted that Kansas courts had applied recreational-use immunity when plaintiffs were injured using outdoor recreation areas like football fields, tracks, and an open area on the University of Kansas campus. *Jackson*, 268 Kan. at 324. Finding no legislative history limiting "open area" to outdoor spaces, the court concluded that it "defies common sense" to provide immunity for outdoor recreational spaces but not comparable indoor spaces. 268 Kan. at 325. The court recognized that it was duty bound to "interpret the words 'open area' using their ordinary meaning." 268 Kan. at 325. But it concluded that an "open area" included an indoor gym without even defining the relevant statutory terms. 268 Kan. at 325. This interpretation is untenable.

Legislative intent guides our statutory interpretation, and we discern that intent through the plain language of the statute. *Bruce v. Kelly,* 316 Kan. 218, 224, 514 P.3d 1007 (2022). This requires us to give common words their ordinary meaning while considering both the specific context in which the language appears and the broader statutory framework. 316 Kan. at 224-25. When statutory language is plain and unambiguous, we apply it as written, neither speculating about legislative intent nor reading in language missing from the text. 316 Kan. at 224-25. Only when plain-language analysis yields ambiguity do we turn to interpretive canons, legislative history, or other background considerations. 316 Kan. at 224-25.

The statutory provision establishing recreational-use immunity covers simple negligence claims from "injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes." K.S.A. 2024 Supp. 75-6104(a)(15). This text yields a plain meaning: when grouped with parks and playgrounds, "open area for recreational purposes," means open-air spaces typically used for physical recreation. Cf. Oxford English Online Dictionary (defining "open space" as "a park, garden, etc., without buildings in the midst of an urban area; esp. an area designated as such by a municipal authority, government, etc."). And before *Jackson*, that appeared to be this court's view too. In a case addressing recreational-use immunity for a sledding accident on the University of Kansas campus, this court described the location as an "*open area* east of Ellsworth Hall known as Daisy Hill" that students and the public had used as "an *open space* for many years" for "sledding . . . football, soccer, baseball, softball, Frisbee throwing, sunbathing, and other sports." (Emphases added.) *Boaldin v. University of Kansas*, 242 Kan. 288, 289-90, 747 P.2d 811 (1987).

Even if one were to find the phrase "open area used for recreational purposes" ambiguous, a common rule of statutory construction would resolve any uncertainty in

33

favor of the plain-language interpretation above. When words appear together in a statute, they should be interpreted in light of their companions—what lawyers call the canon of *noscitur a sociis*. See, e.g., *Woessner v. Labor Max Staffing*, 312 Kan. 36, 56-57, 471 P.3d 1 (2020) (Luckert, C.J., concurring). Here, "open area for recreational purposes" appears alongside "park" and "playground" as three related categories describing types of property eligible for immunity. Reading these companion terms together, "open area for recreational purposes" should refer to spaces similar in character to parks and playgrounds:  outdoor areas designed primarily for active, physical recreation.

I am not the first to question *Jackson*'s interpretation. Professor Westerbeke concluded that "[n]otwithstanding [the Kansas Supreme Court's] rather cavalier statement to the contrary, the plain meaning of the phrase 'open area' does not include buildings." Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act:  The First Twenty-Five Years*, 52 U. Kan. L. Rev. 939, 1022-24 (2004). And Justice Johnson's thoughtful dissent a few years later similarly concluded that the "common meaning of 'open area' would not include a facility fully enclosed inside four walls and a roof." *Poston v. U.S.D. No. 387*, 286 Kan. 809, 822, 189 P.3d 517 (2008) (Johnson, J., dissenting).

Both authors highlighted *Jackson*'s perplexing reliance on a similar Illinois statute that extended immunity to "'parks, playgrounds, open areas, *buildings or other enclosed recreational facilities*.'" *Jackson*, 268 Kan. at 328 (quoting Ill. Comp. Stat. ch. 745, 10/3-106 [1998]); *Poston* 286 Kan. at 822-23 (Johnson, J., dissenting); Westerbeke, 52 U. Kan. L. Rev. at 1023-24. This comparison in fact undermines *Jackson*, as the Illinois General Assembly clearly did not consider "open areas" to encompass "buildings or other enclosed recreational facilities." Otherwise the additional statutory language would serve no purpose. Yet Jackson failed to "discuss this critical distinction in statutory language or the logical implication of our legislature having omitted 'buildings or other enclosed

34

recreational facilities'" from the Kansas statute. *Poston*, 286 Kan. at 823 (Johnson, J., dissenting).

Rather than home in on the text, *Jackson*'s interpretation rests almost entirely on an absurd-results argument: that providing immunity for outdoor recreational spaces but not indoor basketball courts "defies common sense." *Jackson*, 268 Kan. at 325. This reasoning is flawed. For one, as Justice Johnson observed, the Legislature "need not assuage our appetite for common sense, so long as it plainly and unambiguously states its intent with ordinary words employed with their ordinary meaning." *Poston*, 286 Kan. at 823 (Johnson, J., dissenting).

But *Jackson*'s reasoning also fails to consider the numerous rational grounds for distinguishing between outdoor and indoor facilities. Indoor spaces are often contained, managed environments. They typically have regular maintenance schedules, staff supervision, and security measures when closed. Outdoor areas, by contrast, present distinct challenges. They often cover large areas with varied terrain, require significantly more resources to monitor and maintain, and permit less control over public usage. Far from producing an absurd result, limiting immunity to outdoor spaces represents a rational policy distinction that the plain text of the statute appears to embrace.

True, the Legislature has not amended the recreational-use provision of the Tort Claims Act since *Jackson*, which could suggest that this court's interpretation was correct. And our court has sometimes looked to legislative inaction when evaluating a prior interpretation's validity. See, e.g., *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015). In fact, I have relied partly on legislative inaction to uphold an earlier statutory interpretation. See *In re N.E.*, 316 Kan. at 418.

But firm reliance on legislative inaction can present serious interpretive flaws. First, "it can be perilous to rely heavily on legislative silence and inaction to conclude that a court's interpretation of a statute is correct" because such silence typically stems from "unawareness, preoccupation, or paralysis" rather than deliberate approval. *State v. Jackson*, 287 Ga. 646, 659 n.8, 697 S.E.2d 757 (2010). More fundamentally, even if we could discern a later Legislature's perspective, our duty is to interpret the statute the enacting Legislature passed, which makes subsequent legislative views largely irrelevant. See Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 Cornell L. Rev. 422, 427 (1988) ("Today's Congress may leave in place an interpretation of a law simply because today's coalitions are different. The failure of a different body to act hardly shows that the interpretation of what an earlier one did is 'right.'"); *Wenke v. Gehl Co.*, 274 Wis. 2d 220, 243, 682 N.W.2d 405 (2004) ("[A] subsequent legislature's approval of a judicial construction is not as probative as the intent of the legislature *when it enacted the statute*."). Given these limitations, perhaps "we should admit that vindication by congressional inaction is a canard." *Johnson v. Transportation Agency*, 480 U.S. 616, 672, 107 S. Ct. 1442, 94 L. Ed. 2d 615 (1987) (Scalia, J., dissenting).

At any rate, even if we give some weight to legislative inaction, our court has emphasized that applying the plain language of statutes is "[m]ore important." *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 787, 189 P.3d 508 (2008). Other courts similarly refuse to let legislative inaction override clear statutory text. See, e.g., *Ritchie v. Rupe*, 443 S.W.3d 856, 870 n.16 (Tex. 2014) ("[T]his Court has consistently refused to rely on 'legislative acquiescence' as a doctrine of statutory construction when it runs contrary to the plain language of the statute."); *Neal v. Wilkes*, 470 Mich. 661, 668 n.11, 685 N.W.2d 648 (2004) ("[N]either 'legislative acquiescence' nor the 'reenactment doctrine' may 'be utilized to subordinate the plain language of a statute.'"). And the plain language of the recreational-use-immunity provision simply cannot be stretched to encompass fully enclosed indoor spaces.

36

Given these considerations, I conclude that our court's interpretation in *Jackson* was clearly erroneous. The term "open area" simply cannot be read to include fully enclosed indoor spaces like gymnasiums or libraries without doing violence to the plain language of the statute.

*The majority cannot salvage* Jackson.

The majority tries to rescue our court's unpersuasive precedent by offering its own gloss on the statutory language. It cites a dictionary defining "open" as "having no enclosing or confining barrier," and then explains that "the term 'confining' can refer to either a physical or conceptual restriction." *Zaragoza*, 320 Kan. at ___, slip op. at 18. The majority latches onto this idea of a "conceptual" confinement to conclude that "open area" must mean a place "not restricted to a particular group or category of participants." 320 Kan. at ___, slip op. at 18. A public library qualifies, the majority reasons, because everyone can access it. This interpretation cannot be reconciled with the statutory text.

The Tort Claims Act shields government entities from liability for most injuries resulting from "the use of any *public property* intended or permitted to be used as a park, playground or open area for recreational purposes." (Emphasis added.) K.S.A. 2024 Supp. 75-6104(a)(15). Our task is to determine legislative intent by giving common words their ordinary meaning within their specific context. *Bruce,* 316 Kan. at 224-25.

Yet the majority's interpretation effectively reads "open area" to mean "public area"—even though the statute already specifies that it applies only to "public property." This redundancy alone signals a misreading. Moreover, it is unclear whether the majority's definition would apply to injuries occurring on outdoor recreation areas like school football fields or tracks, since these areas are typically restricted to particular

37

participants—namely, students. More troubling still, the majority disregards that "open area" appears directly alongside "park" and "playground"—terms that denote physical spaces, not conceptual accessibility.

As Justice Johnson astutely observed, such an interpretation essentially rewrites the statute. By extending immunity to any space "not restricted to a particular group"— i.e., any public space—the majority "effectively remove[s] the words 'as a park, playground or open area' from the statute," transforming limited immunity into a broad shield for any "public property used . . . for recreational purposes." *Poston*, 286 Kan. at 822 (Johnson, J., dissenting). The majority thus erases the Legislature's specific limitations, imposing its own policy preferences in place of the enacted text. In my view, this strained attempt to salvage our precedent only further demonstrates why the original interpretation was clearly erroneous.

*More good than harm will come from overruling* Jackson.

Determining that an earlier decision was wrong is only half of a stare decisis analysis. To depart from precedent, we also must be clearly convinced that more good than harm would come from abandoning it. See *In re N.E.*, 316 Kan. at 412-13. I am convinced for three reasons.

First, our court has repeatedly emphasized that under the Tort Claims Act, liability is the rule and immunity is the exception. See, e.g., *Poston*, 286 Kan. at 812 (Johnson, J., dissenting); *Lane v. Atchison Heritage Conf. Center, Inc.*, 283 Kan. 439, 444, 153 P.3d 541 (2007); *Jackson*, 268 Kan. at 322. That is because the Act makes government entities "liable for damages" for negligence "under circumstances where the governmental entity, if a private person, would be liable" unless a statutory exception applies. K.S.A. 75-

6103(a). This framework places the burden on the governmental entity to prove that an exception shields it from liability. *Lane*, 283 Kan. at 444.

Yet *Jackson* effectively inverts this framework. By extending recreational-use immunity to indoor spaces like school gymnasiums, *Jackson* opened the door to a sweeping expansion of governmental immunity. Courts have since applied this immunity to injuries occurring during a performance in an indoor theater (*Tullis v. Pittsburg State Univ.*, 28 Kan. App. 2d 347, Syl. ¶ 2, 16 P.3d 971 [2000]); in a bathroom at Kansas State University's football stadium (*Wilson v. Kansas State University*, 273 Kan. 584, Syl. ¶ 1, 44 P.3d 454 [2002]); in a school commons while a student practiced basketball in the gym (*Poston*, 286 Kan. 809, Syl.); on a loading dock at a conference center hosting a dance (*Lane*, 283 Kan. at 452); and now, in a parking lot outside a public library. But see *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 260-61, 32 P.3d 1156 (2001) (explaining that recreational-use immunity would not apply to parking lots because, unlike recreational facilities, schools would develop parking lots regardless of immunity incentives). This ever-expanding immunity to areas the enacting Legislature could not have contemplated has upended the Act's framework, threatening to make governmental immunity the norm rather than the exception the statute intended.

Second, declining to overturn precedent that misinterprets the clear statutory text raises serious separation-of-powers concerns, as other courts have recognized. Courts must apply "the unambiguous statutory language, not improve it" with judicially created additions lacking textual foundation. *McCormick v. Carrier*, 487 Mich. 180, 208, 795 N.W.2d 517 (2010). Though stare decisis promotes "'evenhanded, predictable, and consistent development of legal principles,' . . . the separation of powers doctrine" equally advances these values by requiring courts to "respect the intentions of the Legislature by giving faithful meaning to the words of the law." *Garg v. Macomb Mental Health*, 472 Mich. 263, 284 n.10, 696 N.W.2d 646 (2005). When courts misinterpret "straightforward

39

words and phrases in statutes," they "disregard [their] duty to interpret the law, eroding the constitutional separation of powers" while overturning "compromises made in the legislative process." *Rowland v. Washtenaw Co. Rd. Comm.*, 477 Mich. 197, 226, 731 N.W.2d 41 (2007) (Markman, J., concurring). "[S]eparation of powers considerations counsel in favor of reaching the correct decision" when addressing statutes enacted by "a co-equal branch of government" rather than judge-made law because courts must faithfully apply "the law as enacted by the legislative branch." *Harrison v. McAfee*, 338 Ga. App. 393, 402, 788 S.E.2d 872 (2016). So here, even if policy considerations would favor extending recreational-use immunity to both indoor and outdoor facilities, the Kansas Constitution's implicit separation of powers precludes judicial amendment of unambiguous statutory text.

And third, while I take the majority's reliance-interests argument seriously, I am concerned that this justification may have originated from our court's speculation rather than evidentiary support. In *Jackson*, this court declared that recreational-use immunity encourages governmental entities to "build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation." 268 Kan. 319, Syl. ¶ 10. The court painted a compelling picture of the "enormous" public benefit:  access to facilities for "such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost" and to "a place to meet with others in [the] community." 268 Kan. 319, Syl. ¶ 10.

I have no doubt that such facilities provide great public benefit. But as the majority acknowledges, the legislative record offers no insight into the purpose or scope of the recreational-use provision. *Zaragoza*, 320 Kan. at ___, slip op. at 18-19. This absence provides no foundation for the policy benefits *Jackson* attributed to its expansive reading (another flaw Justice Johnson identified in his *Poston* dissent). See 286 Kan. at 820-21 (Johnson, J., dissenting); see also Westerbeke, 52 U. Kan. L. Rev. at 1016 ("The

legislative intent underlying the recreational use immunity is virtually non-existent and unclear."). Without this foundation, *Jackson*'s policy justifications rest entirely on judicial speculation rather than legislative intent.

In sum, the Kansas Tort Claims Act limits recreational-use immunity to "public property" used as a "park, playground or open area for recreational purposes," language that simply cannot encompass indoor spaces like libraries, indoor theaters, and convention centers. K.S.A. 2024 Supp. 75-6104(a)(15). While *Jackson* has persisted for 25 years, longevity alone cannot validate an interpretation that contradicts plain statutory language. See, e.g., *State v. Hopkins*, 317 Kan. 652, 655-57, 537 P.3d 845 (2023) (overturning 55-year-old interpretation of jail-time credit statute because plain language did not support prior interpretation). And in my view, correcting our court's error would restore the Legislature's intended balance between liability and immunity for governmental entities and respect our constitutional separation of powers. For these reasons, I would overrule *Jackson* and hold that the Kansas Tort Claims Act does not bar plaintiff's claims in this action.

ROSEN, J., joins the foregoing opinion concurring in part and dissenting in part.